CHARLES ALLAS, PLAINTIFF-APPELLANT, v. BOROUGH OF RUMSON, A MUNICIPAL CORPORATION, DEFEND-ANT-RESPONDENT.

Argued May 24, 1935—Decided October 9, 1935.

For the appellant, *Theodore D. Parsons* (*John J. Quinn,* on the brief).

For the respondent, *Harold McDermott.*

The opinion of the court was delivered by

HEHER, J. The nonsuit was erroneous. The general rule is that one who sustains special damage from a common nuisance has an action therefor against the creator of the nuisance, although the latter may also be subject to indictment. But there is a firmly established exception to this rule, grounded in "ancient precedent and public policy," that, in the absence of statutory provision to the contrary, a municipality is not liable to an individual for its failure to exercise an imperative governmental function, or for the negligence of its officers or agents in the performance of a public duty imposed on it by law, whereby a public wrong has been done for which an indictment will lie. The injurious consequences of such a default may not be repaired by private action; the wrong is remediable only by indictment or presentment. *Ansbro* v. *Wallace,* 100 *N. J. L.* 391; *Buckalew* v. *Freeholders of Middlesex,* 91 *Id.* 517; *Kehoe* v. *Rutherford,* 74 *Id.* 659; *Hart* v. *Freeholders of Union,* 57 *Id.* 90; *Waters* v. *Newark,* 56 *Id.* 361; *Jersey City* v. *Kiernan,* 50 *Id.* 246; *Town of Union* ads. *Durkes,* 38 *Id.* 21; *Pray* v. *Mayor, &c., of Jersey City,* 32 *Id.* 394; *Livermore* v. *Board of Freeholders of Camden,* 31 *Id.* 507; *Freeholders of Sussex* v. *Strader,* 18 *Id.* 108. This was the rule at common law. *Russell* v. *The Men of Devon,* 2 *T. R.* 667; *Gibson* v. *Mayor, &c., of Preston,* *L. R. 5 Q. B.* 218; *Mersey Docks and Harbour Board Trustees* v. *Gibbs,* 11 *H. L. Cas.* 686; *Lane* v. *Cotton,* 1 *Salk.* 17; 1 *Ld. Raym.* 646; *Whitfield* v. *LeDespencer,* *Cowp.* 754; *Sutton* v. *Clarke,* 6 *Taunt.* 29.

There is, of course, a well recognized distinction, in respect of liability for negligence, between the exercise of a governmental function or duty imposed upon the municipality by law for the benefit of the public, and from the performance of which no profit or advantage is derived, and powers conferred for the accomplishment of corporate purposes essentially special or private in character, in respect of which the municipality stands upon the same footing as a private corporation. *Martin* v. *Asbury Park,* 111 *N. J. L.* 364; *Eastman* v. *Meredith,* 36 *N. H.* 284; *Kelly* v. *City of Boston,* 186 *Mass.* 165; 71 *N. E. Rep.* 299; *Bigelow* v. *Inhabitants of*

*Randolph,* 80 *Mass.* 541; *Mersey Docks and Harbour Board Trustees* v. *Gibbs, supra.*

Generally, the test of liability to a private action for special damage is whether such damage is or is not a part of a public wrong for which an indictment would lie. *Olesiewicz* v. *Camden,* 100 *N. J. L.* 336; *Jersey City* v. *Kiernan, supra; Waters* v. *Newark, supra; Hart* v. *Freeholders of Union, supra.* But this exemption from liability does not extend to private injury resulting from active wrongdoing chargeable to the municipal corporation. *Kehoe* v. *Rutherford, supra; Callan* v. *Passaic,* 104 *Id.* 643; *Florio* v. *Jersey City,* 101 *Id.* 535; *Ansbro* v. *Wallace, supra; Hart* v. *Freeholders of Union, supra; Cochran* v. *Public Service Electric Co.,* 97 *Id.* 480; *Lydecker* v. *Freeholders of Passaic,* 91 *Id.* 622; *Martin* v. *Asbury Park, supra; Olesiewicz* v. *Camden, supra; Doran* v. *Asbury Park,* 91 *Id.* 651.

The evidence adduced here exhibits an indictable public wrong. Compare *Watkins* v. *Freeholders of Atlantic,* 73 *N. J. L.* 213; *Wild* v. *Paterson,* 47 *Id.* 406; *Johnson* v. *Board of Education of Wildwood,* 102 *Id.* 606. It remains to consider whether it falls into the category of active wrongdoing imputable to the defendant municipality. There is some confusion in the adjudicated cases as to what constitutes active wrongdoing by a municipality, and the line of demarcation is not always clearly maintained. The difficulty usually lies in the application of the principle to the facts of the particular case. The true distinction seems to be whether the private injury has resulted from a wrongful act or positive misfeasance, as distinguished from mere negligence. A private action must rest upon some positive, affirmative act, "wrongful in itself, and detrimental to the plaintiff." *Town of Union ads. Durkes, supra; Hart* v. *Freeholders of Union, supra.* So tested, the evidence here presents a case of active wrongdoing attributable to the municipal corporation. The misfeasance consisted in the building of a ramp so fashioned as to constitute a place of danger. In constructing this sloping passageway, without guard rails or barriers upon the adjoining ground levels, or other device adequate to protect against injury persons exercising reasonable care in the use

of the premises, the municipality was the active agent or instrument in the creation of a condition perilous to human safety on lands devoted by it to a public footway extending to its municipal building; it was directly responsible for the dangerous construction that, in the darkness of night particularly, constituted an ever present menace to the personal safety of the users of the premises. This is not a case of mere neglect by the municipality, or negligence in the performance of a public duty imposed upon it by law; nor is it classable as the negligent performance of a public duty directly imposed by law on its officers. The doctrine of *respondeat superior* is not, in such circumstances, applicable. *Ansbro* v. *Wallace, supra; Paterson* v. *Erie Railroad Co.,* 78 *N. J. L.* 592; *Florio* v. *Jersey City, supra.*

The wrongdoing here charged is no less than positive misfeasance within the contemplation of our cases. Misfeasance differs from malfeasance or nonfeasance. It has been defined as the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner, while malfeasance is doing an act which is positively unlawful or wrong. *Bouvier's Unabridged Law Dictionary (Rawle's 3d Revision)* 2224. In *Cochran* v. *Public Service Electric Co., supra,* where a motor truck driven by the injured plaintiff collided in the night time with an unlighted safety isle in a public highway, Mr. Justice Swayze, speaking for this court, applied the ruling principle in this jurisdiction: "The safety isle constituted such an obstruction that if it was not properly lighted it might become a nuisance and although this nuisance would be due to the negligence of the city in failing to light the obstruction it had created, the city would not escape liability under the rule of *Freeholders of Sussex* v. *Strader,* 18 *Id.* 108, but would be liable for positive misfeasance as in *Hart* v. *Freeholders of Union,* 57 *Id.* 90. The primary duty to light was a duty of the city to prevent its own action from being a nuisance, and as this duty intervened between the alleged negligence of the electric light company [which consisted solely in failure to perform a contract with the city] and the accident, that company could not be liable."

The rule thus laid down, and its applicability to the factual

situation there presented, were later reiterated by this court in *Florio v. Jersey City, supra.* There Mr. Justice Kalisch, in overruling the contention that a municipality was responsible for the consequences of the negligent operation of its fire truck while responding to a fire call, said: "Stress is laid by counsel of appellants on the case of *Olesiewicz v. Camden,* 100 *N. J. L.* 336, decided by this court, as upholding the contention that a municipality is liable for the negligence of its employes. But a fair reading of what was there decided does not lend any support to the appellant's contention. The active wrongdoing must be chargeable to the municipality in order to render it liable, *e. g.,* where a municipality directs its employe to dig a hole in a public highway and leaves it unguarded, or participates in some other act of misfeasance of its employe through which a person suffers injury. *Jersey City v. Kiernan,* 50 *N. J. L.* 246, 250; *Hart v. Freeholders of Union,* 57 *Id.* 90; *Kehoe v. Rutherford,* 74 *Id.* 659; *Doran v. Asbury Park,* 91 *Id.* 651; *Cochran v. Public Service Electric Co.,* 97 *Id.* 480, sufficiently and clearly illustrate the conditions under which a municipality may be held liable for negligence to a person who has suffered an injury. * * * The principle to be extracted from the cases in our own state and in foreign jurisdictions where the common law prevailed appears to be for an injury resulting to an individual from a failure of care on the part of a municipality or of a public officer invested with the performance of certain public duties no action will lie, for the reason that negligence that is nothing more than nonfeasance created no liability. Nor will an action lie against the municipality for negligent acts of misfeasance by the servants or agents of a municipality or a public officer performing duties strictly public, for the reason that for such acts of misfeasance in the performance of public duties by such servants or agents no liability attaches to the employe who is acting only as a representative of the government for the benefit of the public, and to which governmental relation the doctrine of *respondeat superior* does not apply. But where the negligent acts of misfeasance are committed by the municipality, as, for instance, where a municipality, by artificial drains, to divert (*sic*) surface water from

the course it would otherwise take, and cast it in a body large enough to do substantial injury on land where, but for such artificial drain it would not go, an action will lie."

In *Lydecker* v. *Board of Chosen Freeholders of Passaic, supra,* this court dealt with a complaint charging the freeholders with negligently failing (1) to remove oil placed upon a public highway by an oil company, under contract with the county to lay the dust; (2) to close the highway against traffic; (3) to warn persons using the same of its dangerous condition, and (4) to make the road safe after the dangerous condition became apparent. It was held that the gravamen of the complaint was "the negligent *non-performance* by a municipality of a public duty which resulted in an alleged public nuisance;" and that, there being no statute making the county liable for such neglect, the common law rule imposing liability for active wrongdoing applied. Mr. Justice Bergen said: "The distinction drawn was that where in the performance of a public duty the municipality commits an active wrong, it is liable in a civil action to one who suffers special damage, even if also subject to indictment, while it is not liable in a civil action 'for neglect to perform or negligence in the performance of such duty; whereby a public wrong has been done for which an indictment will lie.'" It was pointed out that the complaint averred only that the county "negligently omitted to remove the oil from the highway; failed to close it from use by the public; failed to warn persons not to use it, and failed to make it safe after the spreading of the oil rendered its use dangerous. All of which are acts of omission and not of active wrongdoing." And in *Buckalew* v. *Freeholders of Middlesex, supra,* where the injury was caused by a hole in a public highway, Chancellor Walker, speaking for this court, held that the municipality was not liable to an action for damages "incident to the road falling out of repair," but observed that "if the repairs were made with material which in and of itself would cause injury, a different question would doubtless be presented."

In *Olesiewicz* v. *Camden, supra,* a steamroller employed by the municipality in the laying of an asphalt pavement was left in the highway, during the noon hour, generating steam

without any person in attendance. The safety valve was so regulated that steam would escape at a given pressure. No warning sign was set up. While the plaintiff was driving a team of horses along the highway near the steamroller, it suddenly, with a hissing sound, emitted a cloud of steam which partly enveloped the heads of the horses, causing them to run away. It was held that, entirely apart from the claimed private character of the enterprise, the case thus presented was clearly within the principle of *Kehoe* v. *Rutherford, supra,* and *Doran v. Asbury Park, supra,* and that "it is only where the business or work of the municipality is confined to the exercise of a strictly governmental function, free from any active wrongdoing, on its part, that immunity from responding in damages to persons injured through the negligence of its public officers, agents or servants, is warranted."

There is an apparent conflict between the holding in the case last cited and the doctrine laid down in *Florio* v. *Jersey City, supra.* The conduct termed "active wrongdoing" in the Olesiewicz case borders closely on a "negligent act of misfeasance" by the municipality's servants not chargeable to it under the rule stated in the Florio case; but we need not pause to consider the question. Here we have a nuisance created and maintained by the municipality itself on lands devoted to public travel. Of this more hereafter.

Misfeasance seems to have been the test of liability at the common law; and it would seem that misfeasance of the municipality's servants and agents in the performance of the duties entrusted to them, without more, was sufficient to support an action. In *Foreman* v. *Mayor, &c., of Canterbury, L. R. 6 Q. B.* 214, it appeared that upon the roadside, within the district of which the mayor, alderman and burgesses of Canterbury were the local board, there was a heap of stones left lying which had been broken for the purpose of mending the road. The stones projected about five feet into the road, twenty feet wide, and were not protected, nor lighted, nor was anyone watching them; and on a dark night the plaintiff and his wife, driving along in a cart, came upon the stones, were overthrown, and the wife sustained injury. There was a verdict for the plaintiff; and, on rule to show cause why a

new trial should not be had, it was conceded that, under the rule laid down in *Gibson* v. *Mayor, &c., of. Preston, supra,* the local board was not liable for mere nonfeasance, such as non-repair of the highways; but the plaintiff maintained that the case presented was one of misfeasance, for which they were liable, while the board contended, as in *Cochran* v. *Public Service Electric Co., supra,* that the alleged wrongful act was a mere nonfeasance and not a misfeasance—"the charge is the not lighting the heap." The court of Queen's' Bench, in an opinion by Blackburn, J., discharged the rule, holding that "it is quite clear that the persons who put the stones there were negligent in not putting proper lights to protect passengers coming along the road from the risk of running upon them, and those persons would be liable for that act of negligence; and if they acted as servants of other persons, those who stood in the relation of masters to them would be answerable for the consequences of that negligence," and that "the local board of health, if they were masters of the persons who were guilty of negligence, would be responsible for their acts, and they are not relieved from that responsibility merely because they are either surveyors or a local board." A like rule was applied in *Taylor* v. *Greenhalgh, L. R.* 9 *Q. B.* 487, and *Pendlebury* v. *Greenhalgh,* 1 *Q. B. D.* 36.

There is no sufficient ground for a distinction between the cases cited from this state and the one under review. They invoke the same principle. The liability of a municipality with respect to its public highways does not rest upon a different basis. In the absence of statutory provision to the contrary, it is liable for the consequences of active wrongdoing only. *Ansbro* v. *Wallace, supra; Buckalew* v. *Freeholders of Middlesex, supra; Pray* v. *Mayor, &c., of Jersey City, supra.*

Here the municipality maintained a public way extending from the public highway known as River road, upon which the borough hall premises abuts, along the westerly side of the borough hall to and over its lands on the northerly side of the building to the public offices maintained on that side of the building. This passageway was under the jurisdiction

and control of the borough. It was a thorofare set apart for the use of those having business to transact in the borough hall; and we are unable to perceive a sound reason for holding the municipality liable for active wrongdoing in the one case and not in the other, or for an essentially different classification of the municipal act or conduct when it concerns a passageway of more limited use than a general public highway. Positive misfeasance in the one case bears the same classification in the other. They do not admit of a distinction in principle. The difference between the use of the premises here and the sidewalk or footpath which is a part of a general public highway is one of degree merely and not of kind.

And we are not persuaded that a different rule was laid down in *Freeholders of Sussex* v. *Strader, supra.* While the reporter's note summarizing plaintiff's contentions states that the damage was sustained by reason of the plaintiff's team "running off the abutment of a public bridge which was without side railings or parapets," the case proceeded to a decision on the theory of a failure to make repairs. Mr. Justice Dayton thus stated the questions presented by the certified case: (1) "Upon whom rests the duty of attending to the repairs of that part of the bridge or way, off which the horse in question fell;" and (2) "if that duty be on the board of chosen freeholders, can they be held answerable for damages, in a civil suit." Chief Justice Hornblower, in his concurring opinion, regarded the question as one of failure to make repairs. He said: "If an individual may sue a county for not keeping a bridge in repair, he may sue a township for not keeping a road in repair. If he may maintain such action for an injury done to his horse or carriage, by reason of the road or bridge being out of repair, he may equally maintain an action for any other and for every degree of injury or inconvenience, he may suffer, by reason of a road or bridge not being *in quite as good* order as it ought to have been." He found analogy in the case of one injured when a court house or jail gave way "by being old and out of repair." And this was the *ratio decidendi* of the following cases: *Buckalew* v. *Freeholders of Middlesex, supra; Ansbro* v.

*Wallace, supra; Lydecker* v. *Board of Chosen Freeholders of Passaic, supra; Johnson* v. *Board of Education of Wildwood, supra; Wild* v. *Paterson, supra.*

The case of *Bigelow* v. *Inhabitants of Randolph, supra,* is distinguishable. There an excavation in a school house lot was made by digging into a bank thereon to obtain gravel for the repair of the highways of the town, and to remove the steep bank and make a regular slope from the neighboring streets up to the school house. Before the slope was completed, a pupil, while playing with companions near the edge of the bank, casually, by the caving of the bank, fell down the slope a distance of seven or eight feet. There was an omission to guard the edge of the bank by a railing or other barrier. In denying liability, the Supreme Judicial Court of Massachusetts thus stated the apposite rule in that jurisdiction: "The counsel also cited the case of *Thayer* v. *City of Boston,* 19 *Pick.* 511, where it was decided that, for a tort, which was the effect of malfeasance, and not of mere neglect or nonfeasance, the city was answerable, if the tortious acts were authorized or ratified by the city, or by its officers who were empowered to act for the city upon the subject to which the tort related. Manifestly that decision is not an authority for the maintenance of this action. For it is not shown, in this case, that the making of the excavation in the school house yard was in itself a wrongful act. The purpose for which the case states that it was made, rather leads to the presumption that it was a proper and justifiable act at the time it was done. In the other case, the acts for which the city was held answerable in damages were wholly unwarranted, and wrongful *ab initio.* Besides; if it were certain that the making of the excavation was wrongful—a mere malfeasance—the town never authorized nor ratified it; nor does it appear that it was authorized or ratified by any officers or agents of the town, who were empowered to act in providing the school house. * * * The wrong which the facts show is not malfeasance, but mere neglect of that kind of corporate duty, for the neglect of which, as we have seen, a town is liable to a private action only when it is given by statute."

Nor is the case of *Hill* v. *Boston,* 122 *Mass.* 344, in point. The holding there was that "a duty, which is imposed upon an incorporated city, not by the terms of its charter, nor for the profit of the corporation, pecuniarily or otherwise, but upon the city as the representative and agent of the public, and for the public benefit, and by a general law applicable to all cities and towns in the commonwealth, and a breach of which in the case of a town would give no right of private action, is a duty owing to the public alone, and a breach thereof by a city, as by a town, is to be redressed by prosecution in behalf of the public, and will not support an action by an individual, even if he sustains special damage thereby." In discussing the exceptions to the rule, it was observed that liability in the English cases of *Foreman* v. *Mayor, &c., of Canterbury, supra; Taylor* v. *Greenhalgh, supra; Pendlebury* v. *Greenhalgh, supra,* depended, "not upon the defendant's relation to the highway by reason of being charged with the duty of repairing it, but upon the question whether the obstruction was placed in the highway by the defendant, or the defendant's servants." This would seem to be upon the theory of active wrongdoing; and so may be classified an unguarded excavation on a public highway, and likewise the unprotected ramp or sloping passageway upon a public footway such as we have here.

There is an obvious distinction between keeping a highway free from nuisances and affirmatively creating one. In the one case it is mere neglect of a public duty for which there is no action for a private injury; in the other there is positive misfeasance. As was said in *Hart* v. *Freeholders of Union, supra,* "there is no reason arising out of public policy why municipal corporations should be shielded from liability when a private injury is inflicted by their wrongful acts, as distinguished from mere negligence."

The legislature has undertaken to absolve the "county, municipality or school district" from liability for "injury to the person from the use of any public grounds, buildings or structures." *Pamph. L.* 1933, *p.* 1550. But, inasmuch as this statute was adopted after the occurrence giving rise to

the cause of action here pleaded, we are not called upon to consider it.

Judgment reversed, and cause remanded for further proceedings in conformity with this opinion.

*For affirmance*—TRENCHARD, LLOYD, CASE, DEAR, JJ.   4.

*For reversal*—THE CHANCELLOR, DONGES, HEHER, PERSKIE, VAN BUSKIRK, HETFIELD, WELLS, JJ.   7.