EDWARD TRUHLAR, ADMINISTRATOR AD PROSEQUEN-
DUM OF ISABEL TRUHLAR, DECEASED, PLAINTIFF-
APPELLANT, v. THE BOROUGH OF EAST PATERSON,
A CORPORATION, DEFENDANT-RESPONDENT.

Argued April 10, 1950—Decided May 1, 1950.

*Mr. Isadore Rabinowitz* argued the cause for the appellant. *Mr. Nathan Rabinowitz* on the brief.

*Mr. Dominick F. Pachella* argued the cause for the respondent. *Mr. R. Sery Nicosia,* attorney.

The opinion of the court was delivered by

BURLING, J. This is an appeal by the plaintiff from the involuntary dismissal of his civil action by the Superior Court, Law Division. The appeal is addressed to the Superior Court, Appellate Division, but has been certified on our own motion.

The action seeks damages from the defendant municipality because of the death of the plaintiff's wife, Isabel Truhlar, resulting from a collision between an automobile being driven by her and a railroad train being operated on tracks of the New York, Susquehanna and Western Railroad which intersect Van Riper Avenue at the same level as Van Riper Avenue in the Borough of East Paterson, New Jersey. The plaintiff's claim is predicated on the theory of active wrongdoing on the part of the defendant municipality. The substance of the claim is that the defendant municipality laid out and constructed a public road known as Boulevard, along which the decedent was driving toward the railroad crossing, "at such an extra-ordinarily dangerous angle and course in relation to the railroad tracks, and without providing any warning sign or any warning device whatever indicating the presence of a

railroad crossing at that point, that it was thereby guilty of active wrongdoing." The pretrial order limited the trial to the following issues: "(a) whether the defendant municipality was guilty of active wrongdoing in laying out and constructing the Boulevard in the manner in which it did; (b) whether the alleged negligence of the municipality was the proximate cause of the collision and death; (c) contributory negligence of plaintiff's decedent; (d) assumption of risk of a known danger by plaintiff's decedent." At the conclusion of the plaintiff's case, the defendant moved for dismissal of the action on the grounds that there was no proof of active wrongdoing on the part of the defendant nor any proof that the proximate cause of the decedent's death was related to the alleged active wrongdoing of the defendant. The motion was granted and the present appeal ensues therefrom.

A motion for an involuntary dismissal of an action admits the truth of the plaintiff's evidence and every inference of fact which may be legitimately drawn therefrom which is favorable to the plaintiff. Evidence was presented by the plaintiff from which it might have been found that on April 28, 1947, at approximately 9 A. M. the plaintiff's wife was driving alone in an automobile in a southerly direction along Boulevard. Boulevard runs in a northerly and southerly direction and meets another public road known as Van Riper Avenue at a point close to where the latter crosses the right of way of the railroad. Van Riper Avenue runs generally in an easterly and westerly direction. The railroad tracks at the grade crossing run generally in a southeasterly and northwesterly direction. There are two sets of tracks at the crossing. The decedent proceeded along Boulevard and arrived at the crossing of Van Riper Avenue where she traversed the first set of tracks and reached the second set of tracks when the automobile being driven by her was struck by a train approaching from her right.

The proofs produced by the plaintiff consisted of a map and photographs of the *locus in quo* and oral testimony. There was produced only one person who testified he observed the

collision. His testimony was that he saw the car which was being driven by the decedent when it was 25 or 30 feet from the railroad crossing; that he observed its progress; that it did not stop at the crossing but proceeded across the westbound tracks and reached the eastbound tracks where it was struck by the train. He testified that the railroad bell at the crossing was not ringing. Other testimony was to the effect that, pursuant to ordinances, Boulevard had been constructed by the defendant municipality some years after the establishment of the railroad tracks and Van Riper Avenue and was laid out in relation to the crossing with an acute turn of 60 degrees at the place of intersection and that the safest type of intersection is a right angle and that any deviation therefrom increases the hazard entailed in crossing the tracks because the distance of crossing the tracks is increased as the degree of angle is increased; that there was an absence of warning signs; and that a motorist traveling in a southerly direction on Boulevard could not obtain a view of the tracks at the crossing until he was "practically on top of them."

The plaintiff concedes that the defendant municipality cannot be held liable on the theory of negligence since the building of streets is a governmental and not a proprietary function. *Bengivenga v. City of Plainfield,* 128 *N. J. L.* 418 (*E. & A.* 1942). In the laying out of streets and highways the municipality exercises a power delegated to it by the Legislature, *Hackensack Water Co. v. Ruta,* 3 *N..J.* 139, at 146 (1949), and in the performance of a governmental function, the municipality is carrying out a public duty and is not liable for negligence in the performance of such duty in the absence of a statute creating such liability. *Buckalew v. Freeholders of Middlesex,* 91 *N. J. L.* 517 (*E. & A.* 1918). However, "In the absence of statutory provision to the contrary, it is liable for the consequences of active wrongdoing only." *Allas v. Rumson,* 115 *N. J. L.* 593, at 600 (*E. & A.* 1935).

The question involved, therefore, is whether the conduct of the defendant municipality in the instant case, with refer-

ence to the manner of laying out and construction of Boulevard, in relation to the railroad crossing, constituted active wrongdoing or misfeasance within the contemplation of our cases on the subject. We think it did not. There was nothing inherently dangerous in the road itself which caused the fatal injury to the decedent. The direct cause of the injury was the contact between the car being driven by the decedent and the train. Our cases in which the doctrine of active wrongdoing has been applied relate to situations where the direct cause of the injury was the physical contact between the injured person or property and a condition created by the act of the governmental authority. The following cases are illustrative: In *Hart v. Freeholders of Union*, 57 *N. J. L.* 90, (*Sup. Ct.* 1894), the Board of Freeholders "wrongfully and illegally made a deep excavation in a public highway under the control of said board, into which the plaintiff, while lawfully passing along the highway, fell and was injured." In *Kehoe v. Rutherford*, 74 *N. J. L.* 659 (*E. & A.* 1907), the municipality diverted surface water by means of artificial drains onto private land; a similar situation existed in *Doran v. Asbury Park*, 91 *N. J. L.* 651 (*E. & A.* 1918); *Cochran v. Public Service Electric Co.*, 97 *N. J. L.* 480 (*E. & A.* 1922), involved an injury sustained by contact in the dark with an unlighted safety isle erected in a public street; in *Allas v. Rumson, supra*, the municipality constructed a sloping ramp for use as a public passage from a public road to the borough hall. The ramp was depressed and on each side of it was a concrete retaining wall, the top of which was level with the ground. There were no guard rails or other protective devices on the adjoining ground levels. The plaintiff, in walking on the ground level, in the dark, fell into the ramp and sustained injury. In that case the court said (at *p.* 595):

"The misfeasance consisted in the building of a ramp so fashioned as to constitute a place of danger. In constructing this sloping passageway, without guard rails or barriers upon the adjoining ground levels, or other device adequate to protect against injury persons exercising reasonable care in the use of the premises, the municipality

was the active agent or instrument in the creation of a condition perilous to human safety on lands devoted by it to a public footway extending to its municipal building; it was directly responsible for the dangerous construction that, in the darkness of the night particularly, constituted an ever present menace to the personal safety of the users of the premises."

In *Hammond v. County of Monmouth*, 117 *N. J. L.* 11 (*Sup. Ct.* 1936), the injury was sustained by a fall into an unprotected excavation made in a highway by the defendant. In *Fisher v. Town of Nutley*, 120 *N. J. L.* 290 (*E. & A.* 1938), the plaintiff, while sledding, struck an iron pipe placed by the defendant in an area which the defendant had set apart for sledding. In *Fredericks v. Town of Dover*, 125 *N. J. L.* 288 (*E. & A.* 1940), the plaintiff fell on the metal covering of a storm sewer. In *Newman v. Township of Ocean*, 127 *N. J. L.* 287 (*E. & A.* 1941), the plaintiff fell as the result of a structural defect in the curbing. In *Lovett v. Borough of Keyport*, 133 *N. J. L.* 122 (*E. & A.* 1945), the plaintiff was injured as the result of a fall occasioned by a sloping storm drain.

■ ■ Our cases thus proceed on the theory that active wrongdoing consists of an affirmative act of construction which is *per se* an obvious source of danger. We find no authority for applying the doctrine to a situation such as that presented in the case *sub judice* where the danger does not inhere in the construction of the road itself but where it arises from the relation of the road to a railroad crossing. The cases have not gone this far and indeed there is good reason why they should not do so. Municipalities are not chargeable with errors of judgment or mere negligence in the performance of a governmental function such as the construction and maintenance of public roads. To hold, as urged by the plaintiff, that the construction by a municipality of a highway which crosses railroad tracks or another highway at other than a right angle constitutes active wrongdoing *per se* could well result in a municipality's being liable for active wrongdoing although actually its conduct may not amount to negligence

or even an error of judgment. This would create an anomalous situation to which we cannot subscribe.

We do not conceive that the absence of warning signs along Boulevard indicating the presence of a railroad crossing alters the situation. In this connection the plaintiff refers to *R. S.* 39:4–183.1 *et seq.* This statute provides for the design, contents and location of various types of traffic signs, including railroad advance warning signs, but imposes no obligation upon a municipality to erect such railroad advance warning signs. The failure to post such signs cannot be considered active wrongdoing on the part of the municipality. In *Vickers v. City of Camden*, 122 *N. J. L.* 14 (*E. & A.* 1939), it was the unanimous opinion of the court that the failure of a municipality to keep automatic traffic lights in repair at the intersection of two highways as the result of which "the light showed green for both highways at the same time" in consequence of which two cars collided with resultant death to one of the occupants and permanent injury to another, was not active wrongdoing on the part of the municipality. In that case the judgment of nonsuit was affirmed.

Moreover, the construction of Boulevard with relation to the railroad crossing does not appear to have created the extraordinarily hazardous condition alleged by the plaintiff. The proofs were to the effect that for some distance along the westerly side of Boulevard there was nothing to obstruct the decedent's view of the railroad tracks excepting an irregular board fence seven or eight feet high which was erected in an area between Boulevard and the tracks and running parallel with Boulevard; that the distance between the end of the fence and the first main track at the crossing was 32 feet, thus affording a clear view of the tracks at that point; that a person in an automobile, 10 or 15 feet from the crossing and proceeding in the direction in which the decedent was traveling, would have an unobstructed view along the tracks for the distance of a half mile. The photographs of the *locus in quo* demonstrate the presence of the railroad tracks to be clearly visible to observant persons traveling southerly on the

Boulevard for a considerable distance before arrival at Van Riper Avenue or the railroad tracks.

Since the conduct of the municipality did not constitute active wrongdoing, the dismissal of the action was proper, and since such a dismissal operates as an adjudication upon the merits, *Rule* 3:41–2, it is not requisite to consider the further ground of appeal urged by the plaintiff.

The judgment is affirmed.

*For affirmance*—Justices CASE, OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Chief Justice VANDERBILT—1.