EDWARD MEYER, BY HIS GUARDIAN AD LITEM, CHARLES MEYER, AND CHARLES MEYER, PLAINTIFFS-APPELLANTS, v. BOARD OF EDUCATION, MIDDLETOWN TOWNSHIP, AND EVERETT CURRY, DEFENDANTS-RESPONDENTS.

Argued February 11, 1952—Decided March 3, 1952.

Mr. *Sam Weiss* argued the cause for appellants (*Mr. Norman J. Currie,* attorney; *Mr. Edward W. Currie,* on the brief).

Mr. *J. Victor Carton* argued the cause for respondents (*Messrs. Durand, Ivins & Carton,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The plaintiff, Charles Meyer, in his own right and as guardian *ad litem* for his minor son, Edward,

brought this action for injuries sustained by the latter as a consequence of having his finger caught and mangled in the belt-drive mechanism of a power jig saw.

The saw in question was installed by the defendant board of education in manual training classes in a public school in Middletown Township for the use of students, of whom Edward was one. The defendant Curry was the instructor in charge of the class at the time of the accident.

The facts surrounding the occurrence of the mishap are not complicated nor in dispute. At the close of a class period, as was usual, the students, on Curry's instructions, were cleaning the various machines used in the shop. Edward was cleaning sawdust off the jig saw while a classmate was engaged in replacing the blade of the saw. Without warning, the classmate threw the electric switch starting the saw in operation, with the result that the little finger of Edward's left hand was drawn along the drive-belt and became enmeshed between it and the wheel around which it turned. The finger was badly cut, exposing the bone.

The instructor, Curry, was in the room, about 40 feet away, when the accident happened and his first knowledge of it came when Edward approached him exhibiting the damaged finger.

The complaint alleges negligence on the part of the board of education in maintaining the saw "unequipped with proper guards, safety appliances and protective devices," and on the part of Curry because the machines in the manual training department "at his direction and with his instruction * * * were operated in the negligent manner aforesaid," that is, without the proper guards, etc.

The answer denies negligence and, by way of separate defenses, sets up contributory negligence, assumption of risk, the performance by the board of a governmental function and the statutory provisions concerning its liability and that of its agents and servants.

The accident took place in April, 1949, when the plaintiff Edward was 16 years old. The previous September, at the

start of the school term, Curry had explained to the students each of the machines and the routine prevailing in the shop. Under the established rules, no boy was to turn on a machine unless he had a definite use for it; there were to be no two boys on any one machine at one time; no boy was to turn on a machine until he was satisfied the blade was clear and the moving part was free; he was not to turn on the machine until he had at least an arm's length clearance in each direction on either side and to the rear of him. Moreover, "safety pads," surrounded with a two-inch red mark, were placed in front of the machine. No one was to be within that line while the machine was in operation excepting the person operating it.

The saw which caused the injury had been in the shop at least since 1943, when Curry assumed the position of instructor and supervisor, and although used by three classes a day averaging 25 boys each, there had been no previous accidents.

At the conclusion of the defendants' case, they moved for a directed verdict, which was granted after an extensive colloquy. The Appellate Division affirmed and the case comes here on certification granted by us.

Both the trial court and the Appellate Division decided that the doctrine of "intervening cause" controlled and found for the defendants, basing their decision principally on *Taylor v. Kelvin,* 121 *N. J. L.* 142 (*E. & A.* 1938). The appellate court in its opinion analyzed the facts and concluded thusly:

"When the plaintiff student started cleaning the sawdust from the 'back part of the table' the machine was perfectly harmless because it was not running. Smith, the fellow student, turned on the switch despite the infant plaintiff's presence in plain view and admittedly in violation of the instruction of defendant teacher given to each pupil 'not to turn a machine on until he has at least an arm's length clearance in each direction.' * * *

The act of the fellow pupil in starting the machine while the infant plaintiff was in plain view within an arm's length of it in violation of an instruction known to both boys was such an independent intervening cause as to break the chain of causation

between the accident and the oversight of duty, if any, on the part
of defendants or either of them. The act of the fellow pupil was
the sole proximate cause of the injury."

No consideration was given nor was there an adjudication
on the question of immunity from liability of the defendant
board of education by reason of *R. S.* 18:5–30.

The plaintiffs repel the reasoning employed and assert
there was evidence of "active wrongdoing" which warranted
submission of the case to the jury to determine whether it
was the proximate cause of the resulting injury, citing
*Turck v. Kaywal Realty Co.,* 3 *N. J. Super.* 165 (*App. Div.*
1949) ; *Batts v. Joseph Newman, Inc.,* 3 *N. J.* 503 (1950) ;
*Menth v. Breeze Corp., Inc.,* 4 *N. J.* 428 (1950), and others
hereinafter referred to.

It was not sought to charge the board with the negligence,
misconduct or misfeasance of the defendant teacher. The
theory advanced was liability for its own corporate act in
purchasing, installing, maintaining and permitting to be
used by pupils in its school, under its direct control, a dan-
gerous machine the character of which was known to it,
relying upon *Herman v. Bd. of Education,* 234 *N. Y.* 196
(*Ct. App.* 1922), where the plaintiff, a pupil in the manual
training department of a high school, received injuries while
operating an unguarded buzz saw. The Court of Appeals
of New York held the board liable in negligence, holding
that where the body acts for itself, it is bound to do so with
due regard for the safety of children and others in its care
"in the discharge of those duties imposed on it by law,
which are not delegated or delegable to others." The finding
of "active wrongdoing" as an essential element in the tort
liability of a public body engaged in the performance of a
governmental function, as required in this State, was not
discussed or considered in the opinion.

The doctrine prevailing in this jurisdiction was enunciated
by Justice Heher in *Allas v. Rumson,* 115 *N. J. L.* 593
(*E. & A.* 1935), wherein he acknowledged the difficulty
frequently arising in its application :

"There is some confusion in the adjudicated cases as to what constitutes active wrongdoing by a municipality, and the line of demarcation is not always clearly maintained. The difficulty usually lies in the application of the principle to the facts of the particular case. The true distinction seems to be whether the private injury has resulted from a wrongful act or positive misfeasance, as distinguished from mere negligence. A private action must rest upon some positive, affirmative act, 'wrongful in itself, and detrimental to the plaintiff.'"

Many cases in reference to "active wrongdoing" are compactly digested and arranged chronologically in an opinion by Justice Burling in *Truhlar v. Borough of East Paterson*, 4 *N. J.* 490 (1950). They are so directly pertinent to the problem presently encountered as to make it worthwhile to quote at length:

"Our cases in which the doctrine of active wrongdoing has been applied relate to situations where the direct cause of the injury was the physical contact between the injured person or property and a condition created by the act of the governmental authority. The following cases are illustrative: In *Hart v. Freeholders of Union*, 57 *N. J. L.* 90 (*Sup. Ct.* 1894), the board of freeholders 'wrongfully and illegally made a deep excavation in a public highway under the control of said board, into which the plaintiff, while lawfully passing along the highway, fell and was injured.' In *Kehoe v. Rutherford*, 74 *N. J. L.* 659 (*E. & A.* 1907), the municipality diverted surface water by means of artificial drains onto private land; a similar situation existed in *Doran v. Asbury Park*, 91 *N. J. L.* 651 (*E. & A.* 1918); *Cochran v. Public Service Electric Co.*, 97 *N. J. L.* 480 (*E. & A.* 1922), involved an injury sustained by contact in the dark with an unlighted safety isle erected in a public street; in *Allas v. Rumson*, *supra*, the municipality constructed a sloping ramp for use as a public passage from a public road to the borough hall. The ramp was depressed and on each side of it was a concrete retaining wall, the top of which was level with the ground. There were no guard rails or other protective devices on the adjoining ground levels. The plaintiff, in walking on the ground level, in the dark, fell into the ramp and sustained injury. * * * In *Hammond v. County of Monmouth*, 117 *N. J. L.* 11 (*Sup. Ct.* 1936), the injury was sustained by a fall into an unprotected excavation made in a highway by the defendant. In *Fisher v. Town of Nutley*, 120 *N. J. L.* 290 (*E. & A.* 1938), the plaintiff, while sledding, struck an iron pipe placed by the defendant in an area which the defendant had set apart for sledding. In *Fredericks v. Town of Dover*, 125 *N. J. L.* 288 (*E. & A.* 1940), the

plaintiff fell on the metal covering of a storm sewer. In *Newman v. Township of Ocean*, 127 *N. J. L.* 287 (*E. & A.* 1941), the plaintiff fell as the result of a structural defect in the curbing. In *Lovett v. Borough of Keyport*, 133 *N. J. L.* 122 (*E. & A.* 1945), the plaintiff was injured as the result of a fall occasioned by a sloping storm drain.

Our cases thus proceed on the theory that active wrongdoing consists of an affirmative act of construction which is *per se* an obvious source of danger."

Since then *Kress v. City of Newark* appears in 9 *N. J. Super.* 70 (*App. Div.* 1950), where Judge Colie, following *Allas v. Rumson, supra,* expressed the rule in the identical language there used, to wit, there must be "a positive, affirmative act, wrongful in itself" to impose liability.

In *Milstrey v. Hackensack,* 6 *N. J.* 400 (1951), this court, through Justice Heher, said:

"A municipality is accountable in tort for its own positive misfeasance, generally classified as 'active wrongdoing' in the cases, but not for mere nonfeasance. The corporate body is not chargeable with the negligence of its officers or agents in the performance of a public duty laid upon it by law, unless the wrongdoing is its own by direction or participation. 'Active wrongdoing' and 'positive misfeasance' have the same essential connotation. Misfeasance is the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner."

In *Boyle v. County of Hudson,* 8 *N. J.* 294 (1951), active wrongdoing was considered in an opinion by Justice Case and held not applicable to the facts there existent. It was again recently construed in *Kress v. City of Newark,* 8 *N. J.* 562, where the plaintiff, employed as a technician in the X-ray department of the Newark City Hospital, sued to recover for a cancerous condition of her hands allegedly due to over-exposure to X-ray radiation while employed as a technician in the hospital. Justice Ackerson there said:

"It is a rule of long standing in this State that a municipality in the performance of a governmental function is carrying out a public duty and, in absence of a statute to the contrary, is not liable for negligence in the performance of such duty except upon proof of

active wrongdoing or positive misfeasance chargeable to the municipality itself as distinguished from mere nonfeasance or neglect."

Applying the rule, the court found the plaintiff was "a maid with meager education and experience" and was knowingly for a long time placed in the X-ray department "to operate technical instrumentalities involving latent potential danger * * * without * * * any instruction or warning given to her * * * as to the risk involved by exposure to radiation from the X-ray machines and the proper protective procedures to be observed to avoid such dangers" and it "therefore constituted active wrongdoing, as distinguished from an isolated act of omission or neglect."

In the case *sub judice*, the factual situation is materially different. Here positive warnings were given. There were pads of safety, red marks of caution, and a whole set of regulations employed to avoid an accident. The machine had been installed more than six years before the accident and the evidence shows many precautionary measures employed and a code of rules promulgated to insure safety in its use. At the beginning of each term and before the saw was used, the students were instructed in the rules making up this code, which, amongst other things, required that no two of them were to work at any one machine at the same time. There was a red mark painted on the floor and the students were instructed that no one except the operator was to be within that line while the machine was in use. The efficacy of the safety rules so adopted is manifest as in six years of use there had been no previous accident. As a matter of fact, no injury occurred until the rules themselves were violated by a student turning on the machine while another was engaged in cleaning it.

The gravamen of the complaint is the failure to have a guard over the belt-drive. All the other measures of safety inaugurated were admitted. Assuming negligence in the failure to provide the guard, can this of itself constitute "active wrongdoing" in view of the many warnings and other measures of caution and safety adopted in this instance?

The failure to provide as charged, under these circumstances, at most, was mere negligence and attaches no liability in the case of a public body performing a governmental function.

We discern no "positive, affirmative act, wrongful in itself" which imposes liability within the rule as determined.

Moreover, the evidence here establishes the accident to be the result of an independent intervening cause. In *Batts v. Joseph Newman, Inc., supra,* where one of the defendants contended a verdict should have been directed in his favor because the evidence showed the plaintiff's injuries were not attributable to its negligence but to an independent intervening act, we said:

"If the act broke the causal connection between the appellant's negligent act in permitting the tank to fall in the street and the subsequent injuries suffered by the respondent, this contention would have merit."

Here the throwing of the switch was the very act causing the injury complained of, and consideration must be given to the effect and the responsibility of the intervening agency. In *Davenport v. McClellan,* 88 *N. J. L.* 653 (*E. & A.* 1916), an intervening cause was defined as:

"* * * the act of an independent agency which destroys the causal connection between the negligent act of the defendant and the wrongful injury, the independent act being the immediate cause, in which case damages are not recoverable because the original wrongful act is not the proximate cause." See *Morril v. Morril,* 104 *N. J. L.* 557 (*E. & A.* 1928) ; *Daniel v. Gielty Trucking Co.,* 116 *N. J. L.* 172 (*E. & A.* 1936).

The case *sub judice* is closely analogous to the *Taylor* case, *supra.* There the defendant was a teacher in a public school. The plaintiff, an infant pupil, was engaged in cleaning a press installed in the school for the use of the students. His hand was injured by the act of another boy in moving a fly wheel. The court held the act of a fellow pupil in moving the wheel was the proximate cause of the accident. After repeating the law as established in the *Davenport* case, *supra,* the court found:

"We conclude that the act of the fellow pupil in setting the gears in motion was such an independent intervening cause as to break the chain of causation between the accident and any conduct on the part of the defendant. It was the proximate cause of the injury."

We perceive no distinction in the case under consideration. Here the student who set the machine in operation admittedly received the safety instructions given all students, was fully cognizant of the precautions taken and aware of the potentialities of the device he started in motion. His act broke the chain of causation between the asserted negligence of the school board and the injuries suffered by the infant plaintiff.

"* * * where the second actor, after having become aware of the existence of a potential danger created by the negligence of the first actor, acts negligently in respect of the dangerous situation and thereby brings about an accident with injurious consequences to others, the first actor is relieved of liability, because the condition created by him was merely a circumstance and not the proximate cause of the accident." 38 *Am. Jur., sec.* 72, *p.* 731.

In *Herman v. Bd. of Education, supra,* cited and relied on by the plaintiffs, the question of intervening cause did not arise as the plaintiff there was operating the machine himself and the act of no third person intervened.

We concur in the reasoning of the Appellate Division and the applicability of the *Taylor* case, *supra,* which is dispositive of the issue here as to both defendants.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Justices OLIPHANT, WACHENFELD and BURLING—3.

*For reversal as to defendant Board of Education and affirmance as to defendant Curry*—Chief Justice VANDERBILT —1.

*For reversal as to both defendants*—Justice HEHER—1.