20 N.J. Super. 419 (1952)
90 A.2d 63
CLARENCE W. THOMPSON AND RUTH M. THOMPSON, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
BOARD OF EDUCATION, CITY OF MILLVILLE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1952.
Decided June 27, 1952.
*421 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Nathaniel Rogovoy argued the cause for the plaintiffs-appellants.
Mr. Lawrence N. Park argued the cause for the defendant-respondent (Mr. M. Joseph Greenblatt, attorney).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The question for determination is whether, under the allegations of the plaintiff's amended complaint, her action is barred by the provisions of N.J.S.A. 18:5-30. Under a different theory of law, the same factual situation is presented in Thompson v. Board of Education, City of Millville, 12 N.J. Super. 92 (Cty. Ct. 1951), wherein the court dismissed the plaintiff's action on the pleadings. Thereafter, the plaintiff was permitted to file an amended complaint. Subsequent to the filing of defendant's answer, it again successfully moved for judgment of dismissal on the pleadings, setting up N.J.S.A. 18:5-30 as a bar to plaintiff's action and plaintiff appeals therefrom.
In her complaint, plaintiff asserts that on September 8, 1950, she was invited to enter the Millville Memorial High School by a duly authorized agent of defendant; that:
"3. At said time and place the defendant, by its agents, servants and employees, maintained a nuisance in said Millville Memorial High School and by its acts of positive wrong-doing and misfeasance caused the floors in the corridors of said Millville Memorial High School and of the gymnasium to be highly and improperly waxed *422 and polished and to place upon the floors of the corridors and the gymnasium excessive wax, polish, oil, and other substances, creating a dangerous and hazardous condition for invitees.
4. As a direct and proximate consequence, of said active wrongdoing and positive acts of misfeasance, said plaintiff, Ruth M. Thompson, slipped and fell in said Millville Memorial High School and suffered a fracture of the surgical neck of the left femur, and was injured in many other ways and respects."
N.J.S.A. 18:5-30, relied upon as a bar to plaintiff's action, provides:
"No school district shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding."
In the United States, public education, including that of elementary, high school, or college grade, is universally recognized as a public or governmental function of the state. With respect to school districts, school boards, or other agencies or authorities created exclusively for school purposes, a large number of courts have observed that they are mere agencies or instrumentalities of the state, established for the sole purpose of administering without profit the state system of public education. Several courts have pointed out that, as to tort liability, such agencies or authorities occupy a status different from that of municipal corporations generally, which ordinarily have a dual character and which may exercise proprietary as well as governmental functions. Although the authorities are far from uniform in this matter, various exceptions or limitations have been recognized or adopted by some courts in connection with the rule of tort nonliability as applied to certain agencies or authorities in charge of public schools or public institutions of higher learning, providing, of course, that the particular agency or authority is amenable to suit and that it is the proper party defendant. These exceptions may be summarized as permitting recovery: (1) for a tort arising out of, or committed in the performance of a proprietary as distinguished from a governmental function or activity; (2) for damage or injury *423 to private real property or property rights in respect thereto or consequential injuries thereon, resulting from a trespass or the creation or maintenance of a nuisance; (3) for the taking or damaging of private property for public use without compensation; (4) for personal injury or death caused by the creation or maintenance of a nuisance; (5) for injury or death caused by an active or positive wrong, or a willful or intentional act; (7) where recovery may be predicated upon breach of contract rather than tort; and (8) the view has been adopted by some courts, notably those of New York, that a school district or a school board may be liable for its own acts or omissions as distinguished from those of its officers, agents, or employees. Statutes have been enacted in some jurisdictions which waive the state's immunity from liability in tort, and such a statute has been construed as applicable in connection with state normal schools and other institutions of higher learning over which the state exercised direct control. On the other hand, the legislature, in the absence of a constitutional prohibition, ordinarily has the power by statute to render an agency or authority in charge of public schools or public institutions of higher learning totally or partially immune from tort liability. Nevertheless, even assuming that the general rule of immunity is arbitrary, harsh, and unjust in requiring the individual alone to bear an injury, and that society, in keeping with the modern trend, should afford relief, the courts generally have taken the view that it is for the legislature and not the courts to abrogate or change the rule.
"* * * it is the general rule in practically every jurisdiction in this country, outside the State of New York, that, in the absence of statutory liability, school districts, school boards, or similar school agencies or authorities, are not liable in tort for injuries or damage caused by negligence in the performance of governmental functions." 160 A.L.R. 38, Annotation, Schools-Tort Liability.
Johnson v. Board of Education, 102 N.J.L. 606 (E. & A. 1926); McKnight v. Cassady, 113 N.J.L. 565 (E. & A. 1934); Barnett v. Pulda, 116 N.J.L. 141 (E. & A. 1936).
*424 "* * * since governmental agencies or organizations in charge of public schools or public institutions of higher learning, * * * ordinarily are mere agents or instrumentalities of the state and subject to legislative control, it may be broadly stated that, unless prohibited by constitution, the common-law rule of tort immunity of such agencies or organizations may be abrogated or modified by statute."
160 A.L.R., supra, at p. 85. See also 47 Am. Jur., Schools, sec. 58, p. 337; 18 McQuillin, Municipal Corporations (3d ed.), sec. 53.01.
In New Jersey, the pertinent rule is aptly stated by Mr. Justice Ackerson, speaking for the present Supreme Court, in the case of Kress v. City of Newark, 8 N.J. 562 (1952), wherein he states:
"It is a rule of long standing in this State that a municipality in the performance of a governmental function is carrying out a public duty and, in absence of a statute to the contrary, is not liable for negligence in the performance of such duty except upon proof of active wrongdoing or positive misfeasance chargeable to the municipality itself, as distinguished from mere nonfeasance or neglect. Allas v. Rumson, supra; Truhlar v. Borough of East Paterson, 4 N.J. 490, 494 (1950). The most recent expression of the applicable principle is to be found in Milstrey v. Hackensack, 6 N.J. 400, 408 (1951) where we said: `A municipality is accountable in tort for its own positive misfeasance, generally classified as "active wrongdong" in the cases, but not for mere nonfeasance. The corporate body is not chargeable with the negligence of its officers or agents in the performance of a public duty laid upon it by law, unless the wrongdoing is its own by direction or participation. "Active wrongdoing" and "positive misfeasance" have the same essential connotation. Misfeasance is the wrongful and injurious exercise of lawful authority or the doing of a lawful act in an unlawful manner.'"
See also the opinion of Mr. Justice Burling in Truhlar v. Borough of East Paterson, 4 N.J. 490 (1950), wherein he thoroughly and comprehensively digests many cases with reference to "active wrongdoing"; and the opinion of Mr. Justice Heher, in Allas v. Rumson, 115 N.J.L. 593 (E. & A. 1935), wherein he discusses the distinction between governmental and proprietary operations.
The question posed by this appeal clearly raises the issue as to whether N.J.S.A. 18:5-30 bars recovery in an action *425 charging active wrongdoing on the part of the school district. Clearly, the wrong charged to have been committed by the defendant was allegedly caused by the work performed by its employees in the care and maintenance of the high school building. It is also clear that the accident causing the plaintiff's injuries occurred in a public building, to wit: the high school building, devoted exclusively to governmental purposes. In the case of Allas v. Rumson, supra, at pp. 595, 596, Mr. Justice Heher, speaking for the Court of Errors and Appeals, states:
"* * * It remains to consider whether it falls into the category of active wrongdoing imputable to the defendant municipality. There is some confusion in the adjudicated cases as to what constitutes active wrongdoing by a municipality, and the line of demarcation is not always clearly maintained. The difficulty usually lies in the application of the principle to the facts of the particular case. The true distinction seems to be whether the private injury has resulted from a wrongful act or positive misfeasance, as distinguished from mere negligence. A private action must rest upon some positive, affirmative act, `wrongful in itself, and detrimental to the plaintiff.' Town of Union ads. Durkes, supra; Hart v. Freeholders of Union, supra. So tested, the evidence here presents a case of active wrongdoing attributable to the municipal corporation. The misfeasance consisted in the building of a ramp so fashioned as to constitute a place of danger. In constructing this sloping passageway, without guard rails or barriers upon the adjoining ground levels, or other device adequate to protect against injury persons exercising reasonable care in the use of the premises, the municipality was the active agent or instrument in the creation of a condition perilous to human safety on lands devoted by it to a public footway extending to its municipal building; it was directly responsible for the dangerous construction that, in the darkness of night particularly, constituted an everpresent menace to the personal safety of the users of the premises. This is not a case of mere neglect by the municipality, or negligence in the performance of a public duty imposed upon it by law; nor is it classable as the negligent performance of a public duty directly imposed by law on its officers. The doctrine of respondeat superior is not, in such circumstances, applicable. Ansbro v. Wallace, supra; Paterson v. Erie Railroad Co., 78 N.J.L. 592; Florio v. Jersey City, supra."
And further, at pp. 603, 604:
"The Legislature has undertaken to absolve the `county, municipality or school district' from liability for `injury to the person from *426 the use of any public grounds, buildings or structures.' Pamph. L. 1933, p. 1550. But, inasmuch as this statute was adopted after the occurrence giving rise to the cause of action here pleaded, we are not called upon to consider it."
The plaintiff argues that by the alleged improper application and polishing of the wax on the corridor, the defendant "created a slippery floor; a place of danger. In doing so, it exercised a lawful authority in an injurious manner," citing Milstrey v. Hackensack, 6 N.J. 400 (1951). The defendant concedes:
"We do not quarrel with appellants' review of the general rules of municipal tort liability and immunity, given as introductory matter. Since the cases cited by appellants are concerned with factual situations wherein the statute, N.J.S.A. 18:5-30, was not involved the general discussion is interesting, but not dispositive of the present problem.
Further, we do not dispute that the courts of New Jersey, as elsewhere, have altered the common law * * *. However, we still are to be furnished with any approved example of the courts overriding a declared policy produced by an act of the Legislature."
The plaintiff reminds us that municipal corporations have always been responsible in torts for acts of misfeasance and asserts that the trend has been to include acts of nonfeasance, thereby liberalizing the rule of liability, citing the case of Allas v. Rumson, supra, involving the failure to provide hand rails and lights on a sloping ramp; the case of Milstrey v. Hackensack, supra, involving the failure to use standard materials to repair a sidewalk; and Kress v. City of Newark, supra, where there was a failure to provide protective devices for an X-ray technician. It may well be that the liberal tendency cited by the plaintiff may have been the motivating cause for the Legislature's adoption of the statute here under review, although in our construction thereof we do not rely upon that premise. However, regardless of the reason that prompted the Legislature to adopt the statute, the question is whether its provisions are so clear and unambiguous as to warrant its application to the case presently before us. Since the adoption of the statute, there have been several cases *427 wherein its provisions have been the subject matter of its application, viz.: Allas v. Rumson, supra; Cohen v. Morristown, 15 N.J. Misc. 288 (Sup. Ct. 1937); Selph v. Morristown, 16 N.J. Misc. 19 (Sup. Ct. 1938); Falcone v. Board of Education, Newark, 17 N.J. Misc. 75 (Cty. Ct. 1939); Kane v. Board of Education of Montclair, 20 N.J. Misc. 7 (Sup. Ct. 1941); Doerr v. Newark, 128 N.J.L. 491, 492 (Sup. Ct. 1942); Terranella v. Union Bldg. and Construction Co., 3 N.J. 443, 447 (1950); Meyer v. Board of Education of Middleton Tp., 9 N.J. 46 (1952). In the case of Falcone v. Board of Education, Newark, supra, the applicability of the statute is specifically and directly challenged and decided. In that case, the plaintiffs' intestate, a girl, was using a washroom and lavatory in a public school building in a school playground in Newark, when a slate slab which acted as a screen, fell upon her, causing her death. The complaint asserts that this slab was both erected and maintained improperly "so as to constitute a place of danger, same constituting acts of positive misfeasance." On motion of the defendant, the complaint was stricken on the ground that the cause of action was barred by the provisions of N.J.S.A. 18:5-30. In his opinion, Judge Hartshorne states at pp. 76 and 77:
"* * * it is evident that the Legislature, in enacting the above statute, intended to clarify and simplify this complicated legal situation, at least as far as injuries to the person were concerned. It was, apparently, the legislative belief that public policy would be better served by imposing responsibility for wrongful injuries to the person, solely upon the individuals who committed these wrongful acts, and not also upon the public body itself. The Legislature, doubtless, felt that the liability of this public body to indictment was a sufficient curb upon such public officials, and that the public as a whole should not be penalized. Indeed, from a practical standpoint, the effect of the act upon the persons injured, in so far as our public school system is concerned, has been but small. For while at the present time, if the statute means what it apparently says, the action must be brought only against the individual who is directly to blame, plaintiff's recovery is not limited by the pecuniary responsibility of that individual. For plaintiff has been assured of an additional responsibility equivalent to that of the municipal corporation itself. Pamph. L. 1938, ch. 311. See, also, R.S. 18:5-50.2, 50.3.
*428 But be that as it may, no court can pass upon the economic wisdom of a legislative act. Indeed, no court has any option, but to enforce the clearly expressed will of the people's elected representatives, the Legislature. And, surely, no language could be clearer than the simple words of the 1933 act. That such act was intended to modify the common law is further clear, not only from the generality of its language, but from the fact that such law is to apply, `any law to the contrary notwithstanding.'"
In the case of Terranella v. Union Bldg. and Construction Co., supra, wherein recovery of damages was sought for the death of an 11-year-old boy while playing with heavy concrete pipes placed on a public playground by a construction company employed by the city to install a storm sewer across the playground, the trial court directed a verdict in favor of the individual defendants, as well as the board of education. On appeal, the judgment was affirmed as to the City of Passaic, but reversed as to the contractor, the Union Building and Construction Company. Although in the Terranella case the applicability of the statute (then R.S. 40:9-2, as affecting a municipality or county) was not an issue, Mr. Justice Wachenfeld, speaking for the Supreme Court, stated:
"The verdict in favor of the respondent City of Passaic was proper. We come to this conclusion independently of the immunity we think is granted to the municipality under R.S. 40:9-2 which provides: `No municipality or county shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding.' See Falcone v. Bd. of Education, Newark, 17 N.J. Misc. 75 (Ct. Com. Pleas 1939)."
While it must be conceded that the comment of Mr. Justice Wachenfeld was obiter dictum, the evident approval of the Falcone case is quite significant.
The plaintiff cites the recent case of Meyer v. Board of Education of Middletown Tp., 9 N.J. 46 (1952), wherein damages were sought for the injuries to a minor sustained while cleaning a power jig saw when a fellow student turned on the switch in violation of known safety instructions. In the Meyer case, it was held that there was no liability on the part of the board of education or its instructor, Mr. Curry, *429 on the ground that the act of the fellow student in turning on the switch was an independent intervening act and destroyed the causal connection between the negligent act of the defendants and wrongful injury, the independent act being the immediate cause. We find no support in this decision for the position taken by the plaintiff, as it clearly appears from the record that the statute in question was not involved and consequently, did not call for any consideration or determination. Significantly, in the cases of Kane v. Bd. of Education of Montclair, supra, and Doerr v. Newark, supra, the ruling in the Falcone case was followed.
The dispositive question is as to the meaning and legislative intent of N.J.S.A. 18:5-30. If that is clearly apparent from the language employed by the Legislature, then we are powerless by judicial action to effectuate a repeal of the act or to nullify the legislative purpose. "Our judicial function is confined to the interpretation and application of the comprehensive legislative phraseology in the light of its history, purpose and context." Ablondi v. Board of Review, 8 N.J. Super. 71, 75 (App. Div. 1950); cf. Hackensack Water Co. v. Ruta, 3 N.J. 139, 147 (1949). If a remedy is desirable for a situation such as that presently under review, the necessary action is legislative, not judicial. Adams v. Atlantic County, 137 N.J.L. 648 (E. & A. 1948).
The statute in question was originally adopted as L. 1933, c. 460, p. 1550, and became effective January 10, 1934. In the 1937 revision, the provisions of the statute were separated and assigned to two distinct chapters, (1) N.J.S.A. 18:5-30, applicable to school districts, and (2) N.J.S.A. 40:9-2, applicable to municipalities and counties. Except for this editorial change, the original language remains the same.
With respect to the construction of the act, the plaintiff adverts to the statement of the sponsor of the bill at the time of its introduction. Concerning the merit of the respective arguments as to whether the court, in construing a statute, should be permitted to consider the sponsor's introductory statement, discussed by Mr. Justice Heher in Raymond v. *430 Township Council of Teaneck, 118 N.J.L. 109 (E. & A. 1937); by Judge Bigelow, in Delaware L. & W.R. Co. v. Division of Tax Appeals, 2 N.J. Super. 93 (App. Div. 1949); Mr. Justice Jacobs, then Senior Judge of the Appellate Division, in Tappan, etc., v. Margetts, 9 N.J. Super. 212 (App. Div. 1950); Mr. Justice Oliphant's majority opinion and Mr. Justice Jacobs' minority opinion, in Board of National Missions of the Presbyterian Church v. Neeld, 9 N.J. 349 (1952), the right to do so is specifically rejected by the majority opinion, wherein Justice Oliphant states:
"We have construed that part of the statute R.S. 54:34-4(d), as amended, without resort to the explanatory statement attached to the bill when introduced. It has been the law of this State for nearly a century, the last pronouncement of which was as late as this year, that such a statement is not to be construed as an index of legislative intent in judicial exposition of the enactment. Keyport Steamboat Co. v. Farmers Transportation Co., 18 N.J. Eq. 13 (Ch. 1866), affirmed Ibid. p. 511 (E. & A. 1866); In re Hudson County, 106 N.J.L. 62 (E. & A. 1929); Raymond v. Township of Teaneck, 118 N.J.L. 109 (E. & A. 1936); Flagg v. Johansen, 124 N.J.L. 456 (Sup. Ct. 1946); Hoffman v. Hock, 8 N.J. 397 (1952).

* * * * * * * *
We have held that where a statute is ambiguous on its face, which the one under consideration is not, the preamble and history of the legislation, under some circumstances, might be examined to ascertain the legislative intent, Blackman v. Iles, 4 N.J. [83] (1950); Grobart v. Grobart, 5 N.J. 161 (1950); Bass v. Allen Home Improvement Co., 8 N.J. 219 (1951); but this is a far cry from a holding that the introducer's statement attached to the bill should be examined. All of these foregoing cases dealt with the use of preambles in determining legislative intent. A preamble to a bill is part and parcel of the bill itself, always remains a preface to it and becomes part of the legislative enactment.
Many statements attached to bills are not even prepared by the introducer and in many instances are solely designed to further their passage; they may be accurate or not. Committee reports in the consideration of proposed legislation, debates accurately recorded and gubernatorial messages are in an entirely different category as aids in determining legislative intent.

* * * * * * * *
* * * Particularly in this State the legislative intention must be gleaned from the statute as enacted, not from the expression of a single legislator which was not before the house of origin, the other house when the bill was considered there, or the Governor in the process of its enactment."
*431 In the instant case, we find no ambiguity or obscurity in the language employed by the Legislature in the pertinent statute. The conclusion that the Legislature intended to adopt a public policy of imposing responsibility for wrongful injuries to the person solely upon the individuals who committed the wrongful acts and not also upon the public body itself is inescapable when one carefully scrutinizes the act. Not only is this apparent from an examination of the wording of the body of the act itself, but also from the title of the act, which reads:
"An Act establishing the non-liability of counties, municipalities and school districts by reason of injury to the person from the use of any public grounds or buildings."
The words of the statute are frequently in common use and understanding and do not create any possible misunderstanding as to their meaning, intent and effect, or the purpose which the Legislature intended to accomplish. Not only is the language employed in the statute clear and understandable, but we think our construction of the act that the Legislature intended to adopt the policy of non-liability provided for therein, finds further support in the Legislature's adoption of L. 1938, c. 311, p. 709, sec. 1, R.S. 18:5-50.4, imposing a duty upon school districts to save harmless certain classes of employees from financial loss resulting from a judgment based on negligence and providing that the school district may insure such liability. Even when the school district fails to insure such liability, this provision of the law does not create in the injured party a new cause of action against the board of education. Tripus v. Peterson, 11 N.J. Super. 282 (Cty. Ct. 1950).
For the reasons hereinabove stated, the judgment is affirmed.