HANNAH LOVETT, PLAINTIFF-RESPONDENT, v. BOROUGH OF KEYPORT, A MUNICIPAL CORPORATION, DEFEND-ANT-APPELLANT.

Submitted February 16, 1945—Decided April 19, 1945.

For the appellant, *Snyder, Roberts & Pillsbury (John M. Pillsbury* and *Harvey G. Hartman,* of counsel).

For the respondent, *David T. Wilentz (Theodore D. Parsons,* of counsel).

The opinion of the court was delivered by

HEHER, J.   The defendant municipality appeals from a judgment for plaintiff entered on a jury verdict. The action is in tort; and the gravamen of the complaint is "active wrongdoing" in the construction of a storm drain in one of the streets of the municipality, whereby plaintiff suffered per-

sonal injuries. The award was reduced on rule to show cause; but there was a reservation of all exceptions.

It is now assigned for error that the trial judge denied defendant's motions for a nonsuit and a directed verdict, for lack of evidence of active wrongdoing imputable to it. Apparently conceding that the condition which was the proximate cause of plaintiff's injury constituted a common nuisance, defendant insists that it is not attributable to its affirmative wrongdoing, but to the tortious acts of others, particularly contractors employed by the contiguous landowners to construct gutters and sidewalks in compliance with the requirements of a local ordinance, and that the evidence is conclusive in this regard. We think otherwise.

The drain was laid in the west side of Atlantic Avenue, a street running north and south within the borough, at a point about 115 feet south of the southwest corner of the intersection with State Highway Route No. 36. There was a twelve-inch pipe running at a right angle under the westerly sidewalk of Atlantic Avenue to the concrete curb. The curb forming the gutter encircled this end of the pipe. The average depth of the gutter on either side of this street was eight inches, but where the pipe opened into the gutter there was a drop of ten inches below the normal level of the gutter, or eighteen inches in all. There was also a cement "apron" or "approach" to the drain, extending two feet therefrom and two feet on either side of the drainpipe. At ten-thirty o'clock in the evening of August 13th, 1941, plaintiff, who was seventy-three years of age, crossed Atlantic Avenue from the east sidewalk, intending to enter the grounds on the southwest corner of the intersection, where a carnival was in progress. Automobiles were parked close together along the west side of the street; and she sought passage to the sidewalk between two of the parked vehicles. While so proceeding, one of her feet dropped suddenly into the declivity thus caused by the drain construction, of which she was unaware, and she was thrown to the street surface and severely injured.

The pipe was originally installed in 1898, when there was no curb or street pavement. It is not in evidence that this was done by the defendant borough; indeed, there is some

evidence that the pipe was laid by the County of Monmouth. But the proofs reveal that thereafter the borough assumed full control of the street and is responsible for the condition which caused plaintiff's injury. In October, 1929, an ordinance was adopted by the borough making obligatory upon the contiguous landowners the building of curbs and sidewalks on Atlantic Avenue pursuant to a grade line established by the borough's engineer. The grade was fixed with special reference to drainage requirements; and the curbs and gutters were constructed by the individual landowners, at their own expense, in accordance with the grade so prescribed, and so the borough created the danger inherent in the particular construction. As said, the curbing ringed the drainpipe and deepened the depression. The concrete apron was then built. Later on, in 1938, the borough raised the street level to grade, and then resurfaced it by the application of two coats of bituminous material and a cover of three-eighths inch stone. There was evidence that this hard surface covered part of the apron—one and one-half inches thick on the outer side in front of the drainpipe, but decreasing as it descended toward the bottom of the inlet. Thus, the laying of the hard surface increased the pitch or slope of the gutter at the intake. The resurfacing was done under the supervision of the borough engineer. On either side of the drainpipe, at a distance of two feet therefrom, the gutter descended from a point seven and one-half inches below the curb line to a depth of eighteen inches.

Although the evidence in this regard is in conflict, it is fairly deducible that this storm drain was not of standard design. "Standard" was described as "the adding of a box, a concrete box or an iron casting at that point to receive the same volume of water with a lower depth of curb." It was shown that a drain of the standard type had been installed on the state highway, not more than 200 feet away. Monmouth County's engineer, testifying for the borough, said that he "would consider" the particular drain as "standard installation;" but the witness explained that drains of that type were "recently" installed because "the war effort" had made the "regular standard, accepted, standard steel catch basin

frames and grates" unavailable, and "we have to go into a design similar to this, which has no critical materials." And he acknowledged that hazards to pedestrians did not enter into his concept of "standard construction;" he was concerned only with the avoidance of a "bump great enough to cause a jolt in a car" driven along the gutter. The function of the apron was to prevent road washouts due to the swirling waters at the inlet. And on the evidence it was a jury question whether "the depth or rate of fall of the apron is correct." The county engineer admitted that, in his experience, no aprons had been constructed "with that much of a drop."

Thus, there was evidence tending to show that plaintiff's injuries were the proximate result of a public nuisance created by the defendant borough—such as is classable as active wrongdoing within the purview of the law. *Allas* v. *Rumson,* 115 *N. J. L.* 593; *Fredericks* v. *Dover,* 125 *Id.* 288; *Jaixen* v. *Hargreaves,* 127 *Id.* 370; *Reardon* v. *Wanaque,* 129 *Id.* 18. The nuisance was the result of positive misfeasance imputable to the municipality. The reconstruction of the drain and apron, under the borough's supervision, gave rise to the danger, and the municipality was therefore the author of the nuisance.

It is also contended that there was error in the refusal to charge two requests interposed by the borough.

It suffices to say that, so far as the subject-matter of the requests constituted a proper charge, it was adequately covered in the instructions given the jury.

Judgment affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, THOMPSON, DILL, FREUND, JJ. 15.

*For reversal*—None.