42 N.J. Super. 52 (1956)
125 A.2d 895
RITA CASALE AND DOMINICK CASALE, PLAINTIFFS-APPELLANTS,
v.
THE HOUSING AUTHORITY OF THE CITY OF NEWARK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1956.
Decided October 5, 1956.
*54 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Leslie S. Kohn argued the cause for plaintiffs-appellants.
Mr. John J. Gaffey argued the cause for defendant-respondent (Messrs. Minard, Cooper, Gaffey & Webb, attorneys).
CLAPP, S.J.A.D.
This is an action brought to recover damages for negligence. The defendant moved to dismiss it at the close of plaintiffs' case, and the trial court granted the motion, holding there was no proof of active wrongdoing on defendant's part. Plaintiffs appeal.
Mrs. Rita Casale and her husband, the plaintiffs herein, were tenants of the defendant, residing in an apartment house operated by it. They assume, and hence I shall also, that the operation of this building is to be classified as an activity governmental, and not proprietary, in nature and hence that defendant is to be accorded the immunity given a municipality in connection with such an activity. Cf. Stephens v. Comm'rs of Palisades Inter. Park, 93 N.J.L. 500 (E. & A. 1919); see N.J.S.A. 55:14A-7, 55:14A-8.
Mrs. Casale was injured at 9:30 P.M., January 12, 1954, as a result of slipping, allegedly on ice that lay on a stairway leading from the street level down to the entrance to the above-mentioned apartment house. It was admitted on the argument before us that the stairway was used in common by various tenants of the apartment house. According to an official Weather Bureau report put into evidence, snow fell on the following days: on January 10, 2.9 inches; on January 11, 4.5 inches, total 7.4 inches; and on January *55 12 very small amounts from time to time during the day, with only.02 of an inch falling after 3 P.M., that is, between 5 and 6 P.M.
There was evidence that a maintenance man, "one of the handymen there," doubtless (the point is assumed) an employee of the defendant, shoveled the snow from the stairway on January 12 at 11 A.M. and again at 3 P.M.; and since the condition of the snow on the evening of the 11th appeared at a glance to be the same then as on the evening of the 12th, he apparently, pursuant to standing instructions, shoveled the snow on the 11th as well as the 12th. It is inferable that he cleared away most of the snow, but left some of it together with a layer of hard ice underneath. For there is evidence of ice under the snow on January 11 which could be felt with the foot and which (it may be inferred) was sufficiently treacherous, at least at one spot, as to cause one to slip if one did not have a "pretty strong" grip on the handrail. And there is also evidence of ice under the snow on the 12th after the accident, which, it may be deduced, had been there from the 11th; for the maximum temperature on the 11th and 12th never rose above 29° . Note should also be made of the testimony indicating that the snow covering the ice on the stairway on the evening of the 12th  "it could have been an inch" thick  was loose enough so that it could be "brushed" or "pushed" away. This indication is fortified by the testimony that the ice under the snow on the 11th could be felt with the foot.
These inferences are by no means strong. Nevertheless, drawing them together, I think enough was adduced at the trial to present a jury question, namely, whether the act of shoveling by defendant's employee brought hard ice near to the surface, and at the same time left that ice covered merely with a layer of snow which was not very thick and which was sufficiently loose that it could be brushed or pushed away. In this view of the matter, it may, within reason, be said that the shoveling introduced a new element of danger which would not have been present if there had been no attempt to shovel any of the 7.4 inches of snow from the *56 stairway. Cf. MacGregor v. Tinker Realty Co., 37 N.J. Super. 112, 115 (App. Div. 1955).
The rule, as stated in the cases herein cited, is that a municipal corporation (and hence the defendant), though it is not liable for a nonfeasance in connection with a governmental activity, is nevertheless liable for the active wrongdoing or misfeasance of an employee assisting in such an activity, where the corporation directs or participates in the wrongdoing. Was there active wrongdoing here within this rule?
In the leading and very clarifying decision of Milstrey v. City of Hackensack, 6 N.J. 400, 407 (1951), the following passage from McClelland v. Manchester (1912) 1 K.B. 118, 127 was cited with approval (it was said: "These common law principles obtain in New Jersey," 6 N.J., at page 408):
"`If the work was imperfect and incomplete it becomes a case of misfeasance and not nonfeasance, although damage was caused by an omission to do something that ought to have been done. The omission to take precautions to do something that ought to have been done to finish the work is precisely the same thing in its legal consequence as the commission of something that ought not to have been done, and there is no similarity in point of law between such a case and a case where the local authority have chosen to do nothing at all.'"
To like effect, see Shoreditch Corporation v. Bull (1904), 90 L.T. 210, quoted with approval in Milstrey, 6 N.J., at page 410. As stated in Kelley v. Curtiss, 29 N.J. Super. 291, 297 (App. Div. 1954), reversed on other grounds 16 N.J. 265 (1955),
"To be active, there must be a `positive affirmative act.' Allas v. [Borough of] Rumson, 115 N.J.L. 593, 595 (E. & A. 1935), supra. In other words, in the sequence of events each of which becomes a proximate cause of the injury, there must be a wrongful act (as distinguished from a mere failure to act) on the part of some municipal officer, agent or servant. The last event in that sequence may be non-action; but that does not render the prior act immune. See the cases where there is a failure to put up lights or barriers, after the making of an obstruction, excavation or other nuisance in a road." (Citing cases)
*57 The doctrine of active wrongdoing is not to be limited to a case where there is continuing wrongdoing, as "distinguished from an isolated act or omission or neglect" (Kress v. City of Newark, 8 N.J. 562, 574 (1952)); nor is it to be confined to "wanton" activity. (Repko, "American Legal Commentary on the Doctrine of Municipal Tort Liability," 9 L. & Contemp. 214, 224 (1942), stating the New Jersey law.) The very careful definition of the term, active wrongdoing, given by the court in Milstrey seems to equate it to a single act of simple misfeasance, "the doing of a lawful act in an unlawful manner." (6 N.J., at page 408)
I conclude, then, that there was some proof of active wrongdoing in this case within the rule. However, judgments of dismissal will be affirmed if the appellate court can support the result reached, even though it cannot accept the reason advanced below.
As above stated, a corporation does not become liable for the conduct of its employee, merely because of active wrongdoing on his part while performing duties of a governmental nature; there must also be proof of direction or participation by the municipality itself. In such a case, as has been repeatedly said, the doctrine of respondeat superior does not apply. Florio v. Jersey City, 101 N.J.L. 535 (E. & A. 1925) (an employee driving a fire truck to the fire negligently ran it against plaintiff's horse and wagon); Reilly v. City of New Brunswick, 92 N.J.L. 547 (E. & A. 1918) (city employee lit a fire, which was reasonably necessary in the performance of his duties at the city dump, and sparks from it set fire to plaintiff's home); Paterson v. Erie R. Co., 78 N.J.L. 592 (E. & A. 1910) (driver of a fire engine collided with train); Allas v. Borough of Rumson, 115 N.J.L. 593, 596 (E. & A. 1935); Condict v. Mayor, etc., Jersey City, 46 N.J.L. 157, 159 (E. & A. 1884); Johnson v. Board of Chosen Freeholders of Monmouth County, 21 N.J. Super. 569, 572 (App. Div. 1952); see United States Mortgage Title & Guaranty Co. v. Teaneck Tp., 128 N.J.L. 114, 118 (E. & A. 1942). See the comprehensive article of Judges Weintraub and Conford, "Tort Liability of Municipalities *58 in New Jersey," 3 Mercer Beasley L. Rev. 142, 170, 171 (1934).
Thus in the leading case of Milstrey v. City of Hackensack, 6 N.J. 400, 408 (1951), supra, the present Supreme Court said:
"The corporate body is not chargeable with the negligence of its officers or agents in the performance of a public duty laid upon it by law, unless the wrongdoing is its own by direction or participation * * * In [Florio v. Jersey City, 101 N.J.L. 535 (E. & A. 1925)], where liability was alleged against the municipality for the negligent operation of its fire truck, Mr. Justice Kalisch for the Court of Errors and Appeals found the rule under our cases to be that a municipality is not liable for `negligence that is nothing more than nonfeasance', nor for `negligent acts of misfeasance' by its servants or agents or a public officer performing duties strictly public, unless the misfeasance is committed or directed by the municipality itself." (Italics added)
In pursuance of the rule thus enunciated, the Supreme Court in Milstrey resolved first the question whether there was a negligent act of misfeasance; and then coming to the question whether it could be said with respect to the defendant city that "the wrongdoing [was] its own by direction or participation," the court said (6 N.J., at page 412):
"The misfeasance established by the verdict and judgment here is imputable to the municipality, or so the jury might well find. The material was supplied by the local governing body; and its use for such patchwork was in keeping with long-standing practice where the surface replacement was `a small job.' The work was performed under the supervision of the city's engineer in accordance with the accepted practice. The municipality was responsible for the policy which made for structural insecurity; the misfeasance was its own. Compare Lovett v. Borough of Keyport, supra [133 N.J.L. 122 (E. & A. 1945)]; Olesiewicz v. City of Camden, supra [100 N.J.L. 336 (E. & A. 1924)]; Cochran v. Public Service Electric Co., supra [97 N.J.L. 480 (E. & A. 1922)]."
The opinion in Milstrey proceeds in the next sentence to contrast the New Jersey rule with the English rule on this point:
"In England, local governmental agencies are now deemed liable under common-law principles for the misfeasance of its servant. *59 although not for his nonfeasance. Mersey Docks v. Gibbs, Law Rep. 1 H.L. 93 (1866); Foreman v. Mayor of Canterbury, supra [(1871) L.R. 6 Q.B. 214]."
Milstrey was followed in Kress v. City of Newark, 8 N.J. 562 (1952). The court there likewise reached its conclusion in two steps. First, it found that the placing of an inexperienced maid in a position which gave rise to an unreasonable risk of harm "constituted active wrongdoing" (see Kelley v. Curtiss, supra, 29 N.J. Super., at page 298). In the next sentence it took the second step (8 N.J., at page 574):
"It was likewise open to the jury to find from the evidence that such practices, procedures and conditions were general and had been in existence for such a length of time as to justify the inference that the municipality had notice thereof and by permitting such continuance had actually participated therein, and therefore the active wrongdoing or misfeasance was its own within the holding in Milstrey v. City of Hackensack, supra, and Allas v. Borough of Rumson, supra."
In accord, see Allas v. Borough of Rumson, 115 N.J.L. 593, 595, 596 (E. & A. 1935) and in particular the comment on the case in Annotation, 102 A.L.R. 656; Repko, supra, 224. The whole problem is gone into in Kelley v. Curtiss, supra, 29 N.J. Super., at pages 298-302. Cf. Herman v. Board of Education, 234 N.Y. 196, 137 N.E. 24, 25, 24 A.L.R. 1065 (Ct. App. 1922), charging the board of education with a "personal act of misfeasance"; Note, "Inroads upon Municipal Immunity in Tort," 46 Harv. L. Rev. 305, 307 (1932).
It might be added, in the interests of completing this discussion, that of course no consideration need be given to the question as to what liability, if any, there is on the part of a municipal corporation of this State for a nuisance, as distinguished from negligence. Kelley v. Curtiss, 29 N.J. Super. 291, 295, 296 (App. Div. 1954); Reardon v. Borough of Wanaque, 129 N.J.L. 18, 19 (Sup. Ct. 1942), stating that the doctrine of respondeat superior applies to a case of affirmative negligence amounting to a nuisance *60 but see Milstrey which was a case of precisely that sort. As to the unfortunate state of the law in other jurisdictions with respect to nuisances by municipal corporations, see Prosser, Torts (2d ed.), 779. No one claims there is a nuisance here.
The law, as I conceive it to be, therefore requires the judgment of dismissal to be sustained. For there is no basis here for saying that the defendant itself  or some officer having general authority to remedy the matter or, what Gardner has termed, the defendant's "responsible * * * officers"  directed or participated in the wrongdoing here. See Kelley v. Curtiss, supra, 29 N.J. Super., at pages 298-302; Gardner et al., "An Inquiry into the Principles of Municipal Responsibility in General Assumpsit and Tort," 8 Vanderbilt L. Rev. 753 (1955), discussing the New Jersey law at 767-770.
Severe criticism has been levelled at this rule, insofar as it declines to extend the doctrine of respondeat superior to all misfeasances of a municipal employee committed in a governmental activity. Indeed, the rule granting a municipal corporation an immunity from liability for even nonfeasances arising out of governmental activities, has been termed "`unsatisfactory.'" See Milstrey, 6 N.J., at page 407, referring to Guilfoyle v. Port of London Authority (1932) 1 K.B. 336. See further in accord Prosser, Torts (2d ed.), 774; but to the contrary see Gardner et al. supra, 769.
However any injustice springing from this municipal immunity in connection with a governmental function is somewhat alleviated (Note, 33 Harv. L. Rev. 66, 69 (1920); Malone, 7 Rutgers L. Rev. 236 (1952); but see Repko, supra, 224) by the exception thereto, obtaining in this country only in New Jersey and a few states, under which, as above stated, a municipal corporation becomes liable for a misfeasance which is its own. 2 Antieau, Municipal Corporations, 14 (1955); City of Little Rock v. Holland, 184 Ark. 381, 42 S.W.2d 383 (Sup. Ct. 1931); Adams v. City of Toledo, 163 Ore. 185, 96 P.2d 1078, 1081 (Sup. Ct. *61 1939); cf. Herman v. Board of Education, 234 N.Y. 196, 137 N.E. 24, 25, 24 A.L.R. 1065 (Ct. App. 1922). And any such injustice would be much further alleviated if the corporation were made answerable under the doctrine of respondeat superior for all misfeasances of its agents or employees committed in the course of a governmental function. If this were the law, the plaintiff would be relieved of the duty of proving in such a case as this that the governing body or an appropriate superior officer directed or participated in the misfeasance as agents for the corporate entity; in other words he would not need to establish this second agency.
Our New Jersey rule as to active wrongdoing was doubtless derived from the English rule which much antedated it and which is similar, except in a respect to be noted. See Mersey Docks Trustees v. Gibbs, L.R. (1866) 1 Eng. & Irish App. Cases 93 (H.L.), and early English cases cited therein at 113 et seq.; 16 Hals, Laws of England (2d ed.), 333; see Town of Union ads. Durkes, 38 N.J.L. 21, 22 (Sup. Ct. 1875) (citing Pray v. Mayor, etc., of Jersey City, 32 N.J.L. 394, 395 (Sup. Ct. 1868)), and Hart v. Board of Chosen Freeholders of Union County, 57 N.J.L. 90, 93 (Sup. Ct. 1894), apparently the earliest cases in New Jersey supporting the doctrine of active wrongdoing (C.J. Beasley who sat in both Durkes and Hart had in Pray called special attention to Mersey Docks Trustees). And it would no doubt be more in keeping with modern conceptions if this rule of ours was brought into conformity with the English rule, from which it apparently was drawn. For in England a local authority is chargeable under the doctrine of respondeat superior with liability for the misfeasance of an employee, even though the governing body or some officer having a general authority to remedy the matter, had not directed the misfeasance or participated in it. Indeed it may be said that by the very citation in Milstrey (see the passage above quoted, 6 N.J., at page 412) of the English rule and leading cases, recognition was given to the merit of that rule.
*62 However the state of the law is such that, as we have said before in like situations, any departure from it should be undertaken by the court of last resort, and not by the Appellate Division. Predham v Holfester, 32 N.J. Super. 419, 428 (App. Div. 1954); Turro v. Turro, 38 N.J. Super. 535, 544 (App. Div. 1956).
For these reasons, I would affirm the judgment below.
JAYNE, J.A.D. (concurring in affirmance).
It is with considerable reluctance that I feel impelled to differ in some particulars with my colleagues in the decision of this appeal, which manifestly invites a divergency of views. My study of the record conducts me to the conclusion that the proofs, however generous an appraisal may, within applicable principles, be applied to them, fail to justify the submission of the case to the jury. In that conception of the evidence, the action of the trial judge was in my opinion proper and should be affirmed.
The cleavage of judicial thinking which is manifested in the variant opinions of my learned brethren and in the so-called landmark cases on the broad subject of the governmental immunity from liability, prompts me to record my viewpoint limitedly on the question whether, as Judge CLAPP puts it, in addition to proof of active wrongdoing or misfeasance on the part of a governmental employee, "there must also be proof of direction or participation by the municipality itself," or as Judge Francis suggests, "but liability has been recognized for such acts when committed in the course and scope of the employment without reference to whether the specific wrongful act was directed or adopted."
On this issue, the authorities I think preponderantly sustain the position espoused by Judge CLAPP, and I am thereby constrained to concur in his exposition anent the subject.
I am also aware that the philosophy of the past on the immunity of government from liability which is now embedded in our decisional law is in a modern state of critical agitation.
*63 I acquiesce in the conviction that:
"Inversions and modifications of the existing decisional law more appropriately abide within the domain of the court of last resort."
Greenspan v. Slate, 22 N.J. Super. 344, 351 (App. Div. 1952).
FRANCIS, J.A.D. (dissenting).
I am in accord with Judge CLAPP'S view that the evidence, although scant, is sufficient to create a jury question as to whether the conduct of defendant's employee constituted misfeasance.
However, I cannot agree that the judgment should be sustained on the theory that the tortious conduct was not shown to be that of the defendant itself, either by way of express authorization or ratification.
The authority is a landlord. Having assumed that status, in my judgment there is no sound reason why it should not be subject to the same duty to tenants with respect to common stairways as inheres in the private relationship, at least so far as negligent acts of commission are concerned. The law imposes on a landlord the non-delegable duty of exercising appropriate care to keep approaches used in common by the tenants in a reasonably safe condition for use. Such obligation is a personal one and cannot be discharged even through the employment of an independent contractor. Rizzi v. Ross, 117 N.J.L. 362 (E. & A. 1937); Hahner v. Bender, 101 N.J.L. 102 (E. & A. 1925); Hussey v. Long Dock R. Co., 100 N.J.L. 380 (E. & A. 1924); and see Gill v. Krassner, 11 N.J. Super. 10 (App. Div. 1950). The stairway involved is an exterior one connecting the public sidewalk with the walk leading to the entrance door of the building.
Recognition of that burden undoubtedly was the motivating factor behind the express instructions to the employee designated to act for it in the performance of the duty that was peculiarly its own. The authority did not sit back and do nothing about meeting its obligation as a landlord. If nothing had been done, its culpability would be that of omission *64 alone. Instead action was taken. An employee was assigned to care for the walks and this stairway may be described as a part of the approach walks to the house. He was given express instructions  not to ignore snow thereon  but that "all sidewalks must be shoveled and swept and sanded when ice and snow accumulate" thereon. To satisfy the obligation thus imposed, he had to act affirmatively as directed and when he did the authority itself was functioning in the discharge of its personal duty. Thus I believe that the immunity was lost when the employee was guilty of misfeasance in performing the very act that he was authorized and ordered to perform. In acting through him it was acting itself; it was "participating" in the misfeasance within the contemplation of Milstrey v. City of Hackensack, 6 N.J. 400, 408 (1951).
Moreover, the snow was shoveled at 11 A.M. and again at 3 P.M. on January 12, the day of the accident. On these occasions it is inferable that the hard layer of ice was present. After 11 A.M. and until between 5 and 6 P.M., only traces of snow fell, with.02 of an inch falling between those hours. Plaintiff's fall occurred at 9:30 P.M. So the conclusion may be drawn that the dangerous condition caused by the misfeasance of defendant's employee on this common walkway was present for 10 1/2 hours. Aside from the serious question of whether or not the employee's knowledge of his own conduct is chargeable to the authority (Hahner v. Bender, supra, 101 N.J.L., at 104), other important factors cannot be ignored. Was there no superintendent or supervisor assigned to the housing project? But whether there was or not, the authority was under a duty to make reasonable inspections of the common passageways and it was chargeable with notice or knowledge of any dangerous conditions which existed thereon long enough to have been discovered had such an inspection been made. So here on the facts it was for the jury to say if the defendant should have made an inspection of the stairway within the 10 1/2-hour period. If the jury concluded that such action should have been taken, then it would have been justfied in charging the *65 defendant with knowledge of the dangerous condition created by the misfeasance of the delinquent shoveler. Boyle v. Baldowski, 117 N.J.L. 320 (Sup. Ct. 1936); 2 Am. Jur., Agency, § 368 (1936). And such knowledge, without action to rectify the danger, would support a finding of adoption or ratification of the misfeasance which produced it.
In addition to these considerations, another factor deserves mention. It is true that some of the cases speak of the nonliability of a municipal corporation for negligent acts of misfeasance by its servants or agents unless they are committed or directed by the municipality itself. But liability has been recognized for such acts when committed in the course and scope of the employment without reference to whether the specific wrongful act was directed or adopted.
For example, in Olesiewicz v. City of Camden, 100 N.J.L. 336, 339, 340 (E. & A. 1924), in connection with the paving of a street, city employees were using a steamroller. During the noon hour it was left generating steam and unattended in the street. The safety valve was set so that steam would blow off at a certain pressure. No warning sign had been posted. The plaintiff was driving a team of horses along the street and as he was about to pass the steamroller, it suddenly and with a hissing sound emitted a cloud of steam which partially enveloped the heads of the horses. They became frightened and bolted, with resultant injury to the plaintiff. The Court of Errors and Appeals said the facts fell "clearly within" the principle of active wrongdoing. There was no reference to the doctrine of respondeat superior. Its applicability seems to have been taken for granted. Yet it cannot be said that the city authorized or participated in the specific negligence of leaving the machine in such condition that steam would continue to generate to the point where the safety valve would be put into action automatically.
As Judge CLAPP notes, the immunity rule has come upon much critical evaluation in recent years. See also the concurring opinion in Cloyes v. Delaware Tp., 41 N.J. Super. 27, 37 et seq. (App. Div. 1956). The doctrine had its origin in 1788 in the case with the quaint title of Russell *66 and Others against The Men Dwelling in the County of Devon, 2 Term. Rep. 667, 100 Eng. Rep. 359 (K.B. 1788). With the passage of time, protection of the interests which prompted its adoption originally became less pressing and the courts began to develop additional reasons for the immunity. Prosser, Torts (2d ed. 1955), § 109, at p. 774. However, as we approach more recent days a new trend appears  a developing consciousness that the need of a remedy for the individual citizen outweighs any reason for perpetuating the immunization of the municipal corporation. The evolution calls to mind Justice Cardozo's comment in The Growth of the Law:
"The inn that shelters for the night is not the journey's end. The law, like the traveler, must be ready for the morrow. It must have the principle of growth." (page 20)
And see: Murphy v. Kelly, 15 N.J. 608, 612 (1954); Arrow Builders Supply Corp. v. Hudson Terrace Apartments, Inc., 15 N.J. 418, 426 (1954); Greenspan v. Slate, 12 N.J. 426 (1953).
Under all of the circumstances, I believe there was a jury question as to the responsibility of the defendant. This leads to the conclusion that the judgment should be reversed and a new trial ordered.