**The CITY OF NEWARK, a Municipal Corporation of the State of New Jersey, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. 137–56.

United States District Court
D. New Jersey.

April 5, 1957.

Vincent P. Torppey, by Jacob M. Goldberg, Newark, N. J., Sanderson & Cullen, by Eugene W. Cullen, Newark, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., by Nelson G. Gross, Asst. U. S. Atty., Newark, N. J., for defendant.

HARTSHORNE, District Judge.

The City of Newark sues the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, for damages to an ambulance of the Newark City Hospital, resulting from a collision with a United States mail truck at a street intersection in downtown Newark. The United States counterclaims for damages to the mail truck arising from the same accident.

The Federal Tort Claims Act provides in part:

> "The United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances * *."

Sec. 2674.

The New Jersey Traffic Act provides:

> "The driver of a vehicle upon a highway shall yield the right of way to * * * United States mail vehicles * * * and hospital ambulances, when they are operated on official business * * * and the drivers thereof sound audible signal * * *. This section shall not operate to relieve the driver of any such vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequences of an arbitrary exercise of the right of way." N.J.S.A. 39:4–91.

The governmental status of the parties and the present tendency of the State courts to depart from the earlier authorities on the liability of municipal corporations raise issues of interest. See the following series of recent decisions by the New Jersey courts: Cloyes v. Township of Delaware, 1957, 23 N.J. 324, 129 A.2d 1; Hartman v. Brigantine, App. Div.1956, 42 N.J.Super. 247, 126 A.2d 224, affirmed 23 N.J. 530, 129 A.2d 876; Casale v. Housing Authority of Newark, App.Div.1956, 42 N.J.Super. 52, 125 A. 2d 895.

■ The testimony at the hearing clearly indicated that both drivers were at fault. The ambulance was proceeding South on Mulberry Street, a fairly wide one-way street going South, to its emergency destination on the West side of Mulberry Street just South of its intersection with Lafayette Street, when it collided with the mail truck, which was proceeding Westerly across Mulberry on Lafayette Street, but which had practically stopped just previously, on arriving at the intersection. The red light had just turned against the ambulance as it neared the intersection and in favor of the mail truck. Both the impartial witnesses and the fact that the ambulance driver was coming to a stop just across the intersection, make it clear that while the latter had been sounding his siren further North on Mulberry Street, he had not sounded it when close to the intersection, so that it was not "audible" as he crossed against the red light. He thus did not qualify for the right of way advantage which the above statute gave him otherwise. Since the mail truck was sounding no audible siren or other similar signal, it had no right of way under such statute. Furthermore, its driver admitted he saw the revolving red light on the top of the ambulance as he started to cross Mulberry Street. Finally, since the impact occurred within the intersection, but near its Southwest corner, both vehicles had crossed the bulk of this rather wide intersection, with each other in full sight, before they struck. Both drivers were thus clearly negligent.

■ The negligence of the mail truck driver, imputable without question to his employer, the United States, clearly establishes that judgment on the Government's counterclaim must be entered for the City.

On the question whether the negligence of the Hospital ambulance driver is also to be imputed to his employer, the City, so as to require a dismissal of the main suit by the City against the United States, the Government makes two separate contentions: (1) That under the Federal Tort Claims Act the test of tort liability should be that of "a private individual", not only as to the defendant Government, as the statute expressly requires, but also as to the plaintiff City. In other words, the contention is that the City, by suing under the Federal Tort Claims Act, waives whatever protection it has as a municipality under New Jersey tort law, and therefore the normal rule applies as to imputing the negligence of a servant to his master, whether that master be plaintiff or defendant. The United States contends (2) that even under New Jersey municipal tort law, the negligence of the ambulance driver is imputed to the City, which therefore cannot recover because of such contributory negligence.

■ As to the first of the above points, i.e., whether a plaintiff under the Federal Tort Claims Act must, even if a city or a state, lose its status as such, under the tort law of the state where the accident occurred, and sue "as a private individual", admittedly there is nothing whatever in the words of the statute itself—the sole basis of the right to sue—which so states. Moreover, the United States admitted in open court that the legislative history of that Act, not presently available to the Court, contains nothing to that effect. The burden of the Government's argument in that regard was (a) that it was but fair, since the United States waived its governmental status in the Act, for the other side to be deemed to have waived any similar status. More specifically, the contention is that this fairness of itself proved that

Congress had that intent. But after all, the intention of Congress must normally be ascertained from what it said both in the Act and in the legislative history of the Act. Admittedly there is nothing in the words of the Act, or in its legislative history, which will support the above contention, and after all, that contention is one as to policy. Furthermore, there is grave question whether such a situation would in fact be either fair or in accord with the expressed intent of Congress. For if the Act were so construed, the United States would then recover from a city in such an accident case, not as "a private individual" would, but under much more favorable law than could "a private individual". This contention is incorrect. (b) The Government's next contention along this line is that because a state, and a fortiori, its governmental subdivision, a municipality, can be sued by the United States, therefore when it is sued, or conversely, when it sues, it loses its status under substantive law as such a sovereignty or quasi sovereignty. It is of course quite true that the United States may sue a state, and a fortiori, its subordinate, a municipality. United States v. Texas, 1892, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285, will suffice as authority therefor. But the Government's argument confuses two entirely different legal concepts. The one just alluded to is that of the immunity of a sovereignty from suit at all. Entirely different and distinct is the concept as to the extent of the liability of such sovereignty or quasi sovereignty, when it has been sued. This depends upon the principles of the substantive law, either tort or contract, or otherwise, as affecting that entity, in its nature as a sovereignty or quasi sovereignty. That a state, when sued by the United States, still retains its status as a state, in order to determine the extent of its liability, whether in tort or on contract, is made clear by United States v. North Carolina, 1890, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336. In this case, though suable, the liability of North Carolina was determined to be that applicable under the substantive law to a state. This principle obviously applies, adopting the Government's own analogy, to a municipal corporation. See accord 81 C.J.S., States, § 215, pp. 1307, 1308. This contention is likewise incorrect.

■ Thus, since the United States, under the Federal Tort Claims Act, is liable "as a private individual under like circumstances", and the private individual, driving the mail truck here, would have his liability determined by New Jersey law, with its presently applicable doctrine of negligence and contributory negligence, and since New Jersey law, whatever it may be, must apply to both parties, not simply to one, it is the principles of New Jersey law as to the tort liability of municipal corporations, which apply here to the determination of the liability of the City of Newark for the negligent acts of its ambulance driver.

Accordingly, we turn to the second major contention of the United States, to wit, that under New Jersey municipal tort law, the City is implicated here by the negligence of its ambulance driver. The cases above cited of *Cloyes, Hartman,* and *Casale,* with the many decisions, both old and new, there carefully commented upon, indicate that there is probably no area of New Jersey law which is presently being subjected to closer critique and more expanding liability than that concerning the tort responsibility of municipal corporations. Not only the existence of the three separate opinions in *Casale,* but the two decisions of the New Jersey Supreme Court, the one in *Cloyes,* the other in *Hartman,* the latter expressly adopting the opinion therein of the Appellate Division of the Superior Court, each contain expressions of dissatisfaction with the present highly restrictive tort liability of municipal corporations under New Jersey law. Note the allusion in *Casale* to present "injustice", 125 A.2d at page 900. Note in *Cloyes* the allusion to the fact that "new considerations (had) impelled the courts to peck away at the concept of immunity." 129 A.2d at page 3. Note this Court's further statement in that

opinion that "We do not believe this is the case in which to consider whether to come to grips with the entire problem. We are satisfied that movement toward Strader [a very early case] is in the wrong direction. Hence we confine the inquiry to the question whether the operation here conducted is proprietary within the holding of more recent authorities, without regard to whether the result will jell with expressions which antedate them." 129 A.2d at page 5. And note further in that opinion, after vainly attempting a reconciliation of the earlier authorities, the statement "if such reconciliation does not satisfy a taste for symmetry in the law, we repeat that we are here content to hold whatever ground has been gained." 129 A.2d at page 7. Further note the allusion in the Supreme Court's opinion in *Hartman,* where that Court, after alluding to the Appellate Division opinion, says [23 N.J. 530, 129 A.2d 877] "We affirm thereon", and thereafter alludes "to the expanding tort liability of municipal corporations", citing *Cloyes.*

 Of course this tendency to expand the tort liability of municipal corporations in State law does not justify this Court in hazarding a guess as to how far that tendency will extend in the future. It is the duty of a Federal Court simply to determine what the State law is, and not to attempt to make further changes in that law, even along the line of an apparent tendency. But that does not mean that a State decision must be expressly overruled before this Court can consider it to have been discarded as a correct expression of State law. Where later State cases show that the State courts have themselves disregarded it, without expressly overruling it, it no longer expresses State law, and is therefore to be disregarded by the Federal Courts, when, as here, they are restricted to applying State law. Mason v. American Emery Wheel Works, 1 Cir., 1957, 241 F.2d 906. Here *Cloyes, Hartman,* and *Casale* clearly show in their allusions "to the expanding tort liability of municipal corporations" in New Jer-

sey that many of the older cases in that regard must be disregarded and discarded, as not correctly expressing the law of the State of New Jersey.

We turn to the consideration of the present principles of New Jersey municipal corporation tort law pertinent to this case.

 Since these principles differ, depending upon whether the alleged wrongdoing of the municipality arose in the performance of a governmental or proprietary function, we turn first to that question. While *Cloyes* indicates an expanding view as to the category of municipal functions which are considered proprietary, as compared with those which are governmental, it nevertheless cites, and does not criticise, Kress v. City of Newark, 1952, 8 N.J. 562, 86 A.2d 185, as showing that the Newark City Hospital, and therefore its ambulance, are engaged in the performance of governmental, not proprietary, functions. Thus it must be taken to be the New Jersey law that the ambulance driver here was negligent while performing a governmental function.

 Since, in New Jersey, municipal corporations engaged in the performance of governmental functions are responsible only for active wrongdoing, we turn next to the question of whether this ambulance driver, in driving through a red light without then audibly sounding his siren, and consequently, in part, causing the accident, was engaged in active wrongdoing, or in a mere passive act of negligence. The last word in that regard is given by the Supreme Court's opinion in *Hartman,* which, after expressly affirming on the opinion below, adds "While active wrongdoing still remains the basis of muncipal liability it is sufficient if there has been a 'negligent act of commission' ". The pertinent facts in *Hartman* were that the county dumped dirt in a roadway, and thereafter left it unguarded, thus causing an automobile accident. Similarly, in *Casale,* where the Court apparently was unanimous in finding that active wrongdoing

existed, the maintenance man at a city housing development negligently shoveled snow off an entrance walk, causing injury. In that case, the Court alludes to Milstrey v. Hackensack, 1951, 6 N.J. 400, 79 A.2d 37, as does *Hartman,* saying:

> "The very careful definition of the term, active wrongdoing, given by the court in Milstrey seems to equate it to a single act of simple misfeasance, 'the doing of a lawful act in an unlawful manner.'" 125 A.2d at page 897.

Clearly, the ambulance driver's crashing the red light without sounding his siren at that point was "a negligent act of commission", and thus active wrongdoing.

The final question is, as *Cloyes* puts it, "whether it should be necessary to show that the municipality itself participated in the wrongful conduct". 129 A.2d at page 4. However, the other decisions, of both *Casale* in the Appellate Division of the Superior Court and of *Hartman,* in the New Jersey Supreme Court, in expressly affirming the opinion of the Appellate Division therein, seem to indicate that this question has been answered "by the court of last resort", just as the majority opinion in *Casale* hopes it will be. Indeed, this answer seems to have been given in the very way in which *Casale* hopes it will be, to wit, by largely removing, or perhaps flattening out, this somewhat unique road block against the liability of municipal corporations. 125 A.2d at page 900. Since we here deal with a rapidly developing legal concept, it will aid to consider these decisions chronologically as rendered. Before *Cloyes,* which simply raised the question, first came *Casale.* Here the dissenting Judge said on this point:

> "* * * The immunity was lost when the employee was guilty of misfeasance in performing the very act that he was authorized and ordered to perform. In acting through him it [the municipality] was acting itself; it was 'participating' in the misfeasance * * *."
> (Brackets this Court's)
> 125 A.2d at page 901.

The majority of the Court, while disagreeing that this was the law, did agree that it would alleviate "injustice" if it were made the law "by the court of last resort". Ibid, 125 A.2d at page 900. Shortly thereafter, *Hartman* was decided by another part of the same Appellate Division, and in due course, as to this decision, the "court of last resort" said: "We affirm thereon." The *Hartman* opinion, thus affirmed, said:

> "For purposes of tort liability it is generally sufficient that the municipal agents or employees are acting within the scope of their general duties even if they are proceeding in an irregular manner or contrary to law." 126 A.2d at page 229.

After considerable discussion of the facts, the Court added:

> "Finally, we are satisfied that the plenary authority vested in the assistant road supervisor to handle the curb project included such discretion as to the disposal of the material excavated as implicates the county in tort for the resulting nuisance or dangerous condition. * * * We have no doubt that if what happened here was wrongdoing, it was the county's 'own by direction or participation' for this reason, as well as on account of the long history of similar undertakings by county agents in the past." 126 A.2d at page 230.

In short, the highest State court has recently expressly adopted the principle that, even where a municipality is acting in a governmental capacity, if there is active wrongdoing by a municipal agent or employee, the municipality will be deemed to have made such wrongdoing its "own by direction or participation", where these municipal officials or "employees are acting within the scope of their general duties, even if [in so doing] they are proceeding in an irregular man-

ner or contrary to law." Since this is indeed the very action "by the court of last resort" which the majority in *Casale* deems requisite, not to say desirable, every one of these recent decisions of the New Jersey State courts seem to be in accord in that regard.

True, in the Appellate Division opinion in *Hartman*, 126 A.2d at page 229, there is a brief allusion to the possible effect of the "rank in the line of municipal authority" of the municipal agent whose wrongdoing is relied on as implicating the municipality, the Court there referring to Kelley v. Curtiss, App.Div. 1954, 29 N.J.Super. 291, 102 A.2d 471, reversed on another point 1954, 16 N.J. 265, 108 A.2d 431. *Kelley,* however, on this point only alludes to three rather old cases, raising a question as to the binding effect on a municipality of the acts of an inferior and merely ministerial officer. That these older cases are now somewhat discounted has been noted above. Indeed, the allusion to *Kelley* is but casual and brief, and is immediately followed by the much fuller discussion above noted. So this allusion to "rank" can hardly be deemed a separate holding by the Court in *Hartman*, but rather merely the lip-service of one court to the earlier words of another. Furthermore, since there is nothing sacrosanct in titles, this "rank in line" of the municipal official can only bear logically upon the scope, actual or apparent, of his authority and duties. It is this last which should determine the question.

■■■ Turning to this question, and with its bearing on rank, we must recall that in this case we are not dealing with a mere truck-man, or the driver of the ordinary pleasure car, as to whom the crashing of red lights is a serious offense. On the contrary, we are dealing with an employee who, because the scope of his duties requires his speeding through the streets on errands of mercy, is given the right to go through red lights, using his siren. This authority and discretion vested in this municipal employee is indeed extraordinary, and far from the limited discretion vested in an ordinary driver or another menial ministerial employee. The act complained of clearly occurred while the ambulance driver was acting within the scope of his general duties. Therefore, in any aspect, the City is implicated under New Jersey law by the active wrongdoing of its ambulance driver.

Such being the case, and this being a situation where such wrongdoing connotes negligence, see *Hartman*, this contributory negligence of the City prevents its recovery in the main suit for the negligence of the United States.

### Findings of Fact

1. An ambulance owned by the plaintiff, City of Newark, and operated by its employee within the scope of his employment, was being driven Southerly on Mulberry Street in Newark on an errand of mercy at about 7:45 p. m., on April 13, 1955, and at the same time a United States mail truck was being driven on Government business in a Westerly direction on Lafayette Street. They collided with consequent damage to both vehicles.

2. The mail truck was driven through the intersection while the light was in its favor, but its driver saw the ambulance approaching with its red light revolving on its roof. Yet its driver did not act with due regard for the approaching ambulance.

3. The ambulance proceeded through the said intersection when the traffic light in its direction was red. Although the ambulance was approaching an intersection with a solid brick obstruction on one corner on a dark and rainy night, its driver was not operating his windshield wiper; he hit the siren of the ambulance at a high pitch for the last time when the ambulance was so far from the intersection that the siren was not audible when the ambulance entered the intersection; and he failed to enter the intersection with proper regard for oncoming traffic to his left, with the light in its favor.

### Conclusions of Law

1. The driver of the ambulance was negligent.

2. The driver of the mail truck was negligent.

3. The City of Newark is suable by the United States, but, as sued here, its responsibility is that of a municipal corporation under the law of the State of New Jersey.

4. The improper driving of the ambulance driver was active wrongdoing, and there was participation by the municipality in such negligence, since the driver was then acting within the scope of his authority.

5. This active wrongdoing of the driver of the ambulance is imputed to the City, the ambulance then acting in a governmental capacity.

6. The plaintiff City of Newark takes nothing by its complaint. The defendant United States takes nothing by its counterclaim.

Judgment accordingly.