Odell K. GEORGE et ux., Appellants,

v.

CITY OF HOUSTON, Appellee.

No. 15681.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Feb. 25, 1971.

Rehearing Denied April 8, 1971.

Harry Burns, Houston, for appellants.

Wm. A. Olson, City Atty., Joseph G. Rollins, Senior Asst. City Atty., Houston, for appellee.

COLEMAN, Justice.

This is a suit for damages brought by the parents of a deceased minor son who was drowned in a pond located on land used by the City for the disposal of garbage. The pond was constructed near a public park owned and operated by the City. The trial court instructed a verdict in favor of the City. The judgment is reversed.

Appellants contend (1) that the City is liable in that the pond constituted a nuisance even though it was constructed and maintained in furtherance of the governmental function of garbage disposal, and (2) that the City is liable in that in the proprietory capacity of owner and operator of the park it was negligent in failing to erect a fence and warning signs between the park and the dump site.

The City of Houston has for many years operated the Holmes Road Sanitary Landfill upon a tract of land originally comprising approximately 300 acres. In 1953 the City Council established Blueridge Park out of twelve acres at the southeasterly corner of this tract. In the dedicatory ordinance the park property is described by metes and bounds, which reflect that the tract is rectangular in shape, 800 feet by 700 feet in size. While the testimony is in conflict, there was testimony that a ditch some six inches in depth divided the park property from the remaining acreage. A rather steep embankment or dike about eight feet in height was located on the dump site along the north side of the park. Situated in the park are a health center building, a library building, and two baseball diamonds. The "big diamond" is located in the southwest corner of the tract and the "little diamond" is in the northwest corner. Across the embankment from the backstop for the "little diamond" the City excavated soil for use in its land fill operations resulting in the creation of a pond 25 feet wide by 30 feet long having a depth of 12 to 15 feet in the center. In answer to an interrogatory the City stated that the pond was 120 feet from the north boundary of the park. There is testimony that the pond is located adjacent to the embankment. The superintendent of the landfill designated the location of the various excavations.

While the pond was excavated in order to secure soil for use in the City's land fill operations, it also trapped polluted water leached from the buried garbage and rain water. It was anticipated that at some future time the water would be pumped from the pond and garbage would be buried in the excavation. The cost of pumping the water from the pond is nominal and the necessary equipment is available at the site. There was testimony that it was necessary to collect the polluted water in order that it could be treated.

On May 8, 1967, Victor Roy George, plaintiffs' eleven year old son, rode his bicycle to the park in the company of his brother and two friends. His brother stopped at the "big diamond" to watch a baseball game. The other boys decided to play at the pool where they had played on the preceding weekend. They rode their bicycles to the embankment near the "little diamond" and found it too steep to cross with their bicycles. They then rode a short distance to a point where a path was located. There they dismounted and pushed their bicycles over the dump and proceeded to the pond. There is testimony that the pond had been in existence for as long as two months. There was scattered vegetation in the area.

On the previous weekend the boys had floated in the pond on a piece of styrofoam which served as a raft. The raft could not be reached from the bank. When Victor reached out to get a stick, the dirt bank crumbled and he fell into the water. As he struggled to get out, the bank of the pond continued to crumble and he slipped away into the deep water. He could not swim. Arnett Johnson, eleven years of age, jumped in to assist him. Victor caught this boy's leg and Arnett swam to the edge of the pond. As James Thomas was pulling Arnett out of the pond, Victor turned loose and they were unable to see him under the muddy water. His body was recovered some time later.

An Assistant Director of Public Works testified that he had seen many children and adults roaming over the area. There were some signs erected in the dump area stating "Authorized Personnel Only." There is no evidence that such signs were located near the pond. There is testimony that children used a plain trail through the dump in going from the park to a swimming pool located in Sunnyside Park. It seems that the area between the official boundary of the park and the dirt hill was used in connection with the baseball diamond. There was testimony that the dirt hill stopped the foul balls.

An annotation found in 56 A.L.R.2d 1416, 1419, citing cases from some twenty-three jurisdictions, states:

"The doctrine that immunity of municipal corporations from liability for acts done in the performance of governmental functions does not extend to cases of personal injuries or death resulting from a nuisance created or maintained by a municipality, and that such a municipality is liable for such injuries although the nuisance was created or maintained in the course of the discharge of public duties or governmental functions, has been recognized, either unequivocally or at least in some modified degree, in many cases."

In Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565 (1941), the Supreme Court recognized that a city is liable for damages caused by the maintenance of a nuisance, even though the city in maintaining the same is engaged in the exercise of a governmental function, if the nuisance constitutes "an unlawful invasion of the rights of others."

The Supreme Court approved the rule stated in Gotcher v. City of Farmersville, supra, in Bennett v. Brown County Water Imp. Dist. No. 1, 153 Tex. 599, 272 S.W.2d 498 (1954).

In Parson v. Texas City, 259 S.W.2d 333 (Tex.Civ.App.—Ft. Worth 1953, error ref.), the court said:

"* * * However, it has long been established that an exception to such immunity exists when a city creates or maintains a nuisance in connection with a governmental function. (Citations omitted). Therefore, if the appellants have in fact alleged that the City created or maintained a nuisance, they have alleged a cause of action, * * *.

"* * * *

"We believe that the weight of authority in this state and other jurisdictions is to the effect that to constitute a nuisance the danger must be inherent in the thing itself, beyond that arising from negligence in its use, * * *."

In Olivas v. El Paso Electric Co., 54 S.W.2d 154 (Tex.Civ.App.—El Paso 1932, error ref.), the court held that where a private nuisance was created by the maintenance of an electric power line on the plaintiff's premises, together with the failure to exercise the proper degree of care in the transmission of high voltage currents of electricity, the damage to the property could be recovered. The contention that damages for the death of the plaintiff's son could be recovered without proof of negligence was rejected. The court said: "* * * 'The nuisance is created, not by the simple trespass, but by the negligence of the defendant in the particulars indicated. * * * The proximate cause of the death of the son was the negligence stated, * * * his contributory negligence would defeat recovery' * * *."

In Wiggins v. City of Fort Worth, 299 S.W. 468 (Tex.Civ.App.—Ft. Worth 1927), the Court of Civil Appeals held that a cage so constructed that a wild bear kept therein was able to reach its paws through the wire, and the fence surrounding the cage, and seize a small child, constituted a nuisance. This decision was approved by the Commission of Appeals in City of Ft. Worth v. Wiggins, 5 S.W.2d 761 (Tex. Com.App.1928).

In Walker v. City of Dallas, 278 S.W.2d 215 (Tex.Civ.App.—Amarillo 1953, n. w. h.), the court said:

"* * * if the City of Dallas * * * maintained a nuisance * * * the summary judgment should not have been granted * * *. The principle of nonliability of a city for the negligent acts of its employees while engaged in a governmental function cannot be eliminated by merely pleading that such negligent acts constituted a nuisance. * * *" The court quoted from Parson v. Texas City, supra, a passage containing the statement "* * *

'that to constitute a nuisance the danger must be inherent in the thing itself, beyond that arising from negligence in its use' * * *."

The exception from nonliability has also been recognized by the Court of Civil Appeals at El Paso in the case of Strickland v. City of Odessa, 268 S.W.2d 722 (1954, n. w. h.), where the court said: "* * * Taking all the allegations of plaintiff's petition as true, it is still inescapable that the construction of the tank itself, even for its intended use (as a prison cell), did not necessarily constitute a nuisance, but that the harm resulting was clearly caused by the neglect and negligence of the servants of the City of Odessa while engaged in the performance of a governmental function. * * *" The court quoted from Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080, "'* * * That to constitute a nuisance "there must * * * be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use."'"

Apparently the Court of Civil Appeals at Austin also recognized the exception when, in Kling v. City of Austin, 62 S.W.2d 689 (1933, n. w. h.), it said: "If it be conceded that the location of the hydrant constituted a nuisance, it would necessarily follow that one injured thereby would have an action in damages, * * *."

A nuisance has been defined as being "* * * anything that works or causes injury, damage, hurt, inconvenience, annoyance, or discomfort to one in the legitimate enjoyment of his reasonable rights of person or property * * *." District of Columbia v. Totten, 55 App.D.C. 312, 5 F. 2d 374 (1925).

In Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485 (1932), the court said:

"* * * A 'nuisance' does not rest on the degree of care used, but on the degree of danger existing with the best of care. * * *

"* * * There must, however, be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use before the question of a nuisance can properly be submitted to a jury. * * * Of course, this condition of inherent or intrinsic danger may arise either from original improper construction of a structure or from such a deterioration thereof from neglect as to warrant the conclusion that an inherently dangerous condition is intentionally permitted to exist. * * *"

In Braun v. Trustees of Victoria Ind. School Dist., 114 S.W.2d 947 (Tex.Civ. App.—San Antonio 1938, error ref.), the court considered that the condition alleged to constitute a nuisance must be inherently dangerous. The court held that in determining the liability of an independent school district for personal injuries no distinction can be made between nuisance and negligence. The basis for the difference in the rule applicable to counties, school districts, water districts and like governmental subdivisions from that applicable to municipal corporations is explained in Bennett v. Brown County Water Improvement District No. 1, supra, thus: "* * * In the case at bar, the district is a governmental agency and body politic, and governed by the law applicable to counties. A county is liable only under statutory enactment, and there being no statute making the district liable in a case such as this, no liability can result. * * *" See City of Galveston v. Posnainsky, 62 Tex. 118; Anno. 56 A.L.R.2d 1416, 1424.

Municipalities may also be subject to liability, for torts committed in the performance of governmental functions, in some jurisdictions, where liability is based on acts which, independently of the doctrine of respondeat superior, may be attributed to the municipality itself. Casale v. Housing Authority of City of Newark, 42 N.J. Super. 52, 125 A.2d 895 (1951); Allas v. Borough of Rumson, 115 N.J.L. 593, 181

A. 175 (1935); Herman v. Board of Education, 234 N.Y. 196, 137 N.E. 24 (1922); Kies v. Erie, 169 Pa. 598, 32 A. 621 (1895); Hoggard v. City of Richmond, 172 Va. 145, 200 S.E. 610 (1939); Burris v. City of New Orleans, 86 So.2d 549 (La. App.—Orleans 1956, writ of certiorari denied).

In an analogous situation the courts of Texas have long recognized that a charitable corporation is liable for harm caused by its own negligent actions in some instances, although such a corporation has not been held liable under the doctrine of respondeat superior for the negligence of its agents and servants. Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749 (1943); Armendarez v. Hotel Dieu, 145 S.W. 1030 (Tex.Civ.App.—San Antonio 1912, n. w. h.); St. Paul's Sanitarium v. Williamson, 164 S.W. 36 (Tex.Civ. App.—Dallas 1914, error ref.); Medical & Surgical Memorial Hospital v. Cauthorn, 229 S.W.2d 932 (Tex.Civ.App.—El Paso 1949 error ref., n. r. e.); Felan v. Lucey, 259 S.W.2d 302 (Tex.Civ.App.—San Antonio 1953, error ref., n. r. e.).

While the doctrine of "attractive nuisance" was developed as an aspect of the law of negligence, it is also applied in deciding cases based on nuisance. Burris v. City of New Orleans, supra.

The case of Gotcher v. City of Farmersville, 151 S.W.2d 565 (Tex.1941), is similar on its facts in many respects to the case at hand. A child, seven years of age, was drowned in a cesspool maintained by the city. The cesspool was an open structure 20 feet wide, 40 feet long, and 9 or 10 feet deep. No fence, or other safeguards or protection, were maintained around the pool. The pool contained sewage and acid. The process of decomposition caused a collection of sediment on top of the liquid, which presented the appearance of a solid mass. The trial court instructed a verdict for the defendant.

The court held that the city was engaged in a governmental function in maintaining the cesspool, "and that by reason thereof the City was not liable for any negligence of its employees in its operation." The plaintiffs had plead that the cesspool constituted a nuisance, but the court held that the plaintiff had not alleged facts constituting an unlawful invasion of the rights of others. The plaintiff had also alleged as a basis for imposing liability on the city that the cesspool was so situated and maintained as to constitute an attractive nuisance.

In answer to this contention the Supreme Court said:

"* * * Liability under the attractive nuisance doctrine is based on the theory that the dangerous thing was so situated and maintained as to attract children from the street, or from some public place where they may be expected to be, thus raising a presumption that the parties so maintaining the nuisance should have foreseen and anticipated the injury. * * * In order to invoke the doctrine it is necessary that the thing or condition alleged to have constituted the attractive nuisance should have been so situated as to entice the child onto the premises, and it is not sufficient that it attracted him after he had already become a trespasser. * * * It appears, therefore, that the child was not upon the premises because of any attraction or allurement of the cesspool; and consequently the attractive nuisance doctrine passes out of the case. * * *"

The basis for this decision has been eliminated by subsequent decisions of the Supreme Court of Texas adopting the rule laid down in Volume 2, p. 920, Sec. 339 of the Restatement of the Law of Torts. In Eaton v. R. B. George Investments, 152 Tex. 523, 260 S.W.2d 587 (1953), the court said: "The effect of these late cases is to abolish as to young children the distinction between trespassers, licensees and invitees when the four conditions have been satisfied and to impose on the landowner under such circumstances a duty of ordinary care to protect them from injury. * * *"

There is evidence, sufficient to raise fact issues, that the pond was constructed at a place where the City knew or should have known that young children were likely to trespass; that the City knew or should have known and realized or should have realized that the pond involved an unreasonable risk of death or serious bodily harm to such children; that the child because of his youth did not discover the dangerous condition or realize the risk involved in coming within the area of danger; and that the utility to the City of maintaining the pond in its dangerous condition was slight compared to the risk of harm to young children.

The evidence raises issues on all points required by the theory of attractive nuisance. Gotcher v. City of Farmersville, supra, does not hold that a city can be held liable for negligence in the exercise of a governmental function under the attractive nuisance theory. Neither did the court hold that liability could not be sustained in such a case. Professor Prosser states: " * * * In other words, child trespasser law is merely ordinary negligence law, and the fact that the child is a trespasser is merely one fact to be taken into account, with others, in determining the defendant's duty, and the care required of him. * * * " Prosser, Law of Torts, 3rd Ed., p. 374.

■ To hold the City liable on a theory based on ordinary negligence law runs counter to the well established law in this state that a city is not liable by reason of the negligence of its employees in connection with activities deemed governmental in nature. It is not necessary to review the evidence to determine whether an issue is raised as to acts of negligence which may be attributed to the city itself. It does not appear that the courts of Texas have considered the question of whether in tort actions a distinction can be drawn between the actions of a municipality and the actions of its agents, servants and employees. The courts have been cautious in making that distinction in the case of char-itable institutions. While the courts of some states make such a distinction, we are not persuaded that those cases should be followed in this jurisdiction.

■ While only one Texas case has been found in which recovery against a municipality has been allowed for personal injury or death sustained by reason of a nuisance established or maintained by a municipality in the performance of a governmental function, that a cause of action exists in such a case where a right of an injured party has been violated is clearly recognized. In some jurisdictions the injury must be sustained in connection with a violation by the municipality of a property right. 63 C.J.S. Municipal Corporations § 770b, pp. 66–71.

The Texas courts have not limited the rights protected solely to property rights. In Ft. Worth & Rio Grande Ry. Co. v. Glenn, 97 Tex. 586, 80 S.W. 992 (1904), the court held that a child could recover damages resulting from illness caused by a nuisance which affected his father's premises although he owned no interest in the land. In its opinion the court stated: "It seems to us that a conflict of opinion upon this question has arisen from confusing the damage which results to property from a nuisance with that special damage, such as sickness, which may result to an individual from a nuisance either public or private."

■ A private nuisance is said to be a civil wrong, based on a disturbance of rights in land, and only one whose rights have been disturbed can have a cause of action. A public nuisance arises from interference with the rights of the community at large. Prosser, Law of Torts, 3rd Ed., p. 594. One who has suffered special damage by reason of a public nuisance, such as personal injury, has such special damage as will give rise to a cause of action in his favor. Ibid, pp. 608–609.

■ While the deceased boy in the case before us was technically a trespasser when he reached the area of the pond, de-

spite that fact, in view of his age and the concealed nature of the danger, his right to protection from unreasonable risk of physical harm is not limited. If the rights of a young child who has intruded onto the land of another are not limited by that fact in a case of ordinary negligence, there is nothing in the doctrine of governmental immunity which would require that a different rule be applied in a case based on nuisance. The rules of tort liability applied in attractive nuisance cases, where the basis of liability is ordinary negligence, are equally applicable in cases where the basis of liability is nuisance. Burris v. City of New Orleans, supra.

■ If there is evidence sufficient to raise an issue as to whether the pond is inherently dangerous, the case should have been submitted to the jury. Bates v. City of Houston, 189 S.W.2d 17 (Tex.Civ.App. —Galveston 1945, writ ref., w. m.) ; Walker v. City of Dallas, supra; Parson v. Texas City, supra.

When the evidence is considered in the light most favorable to appellants, as it must be in a case where the court withdraws a case from the jury, it appears that the pond in question was inherently dangerous and constituted a nuisance.

The park was established by ordinance out of a tract of land which was in use as a site for the disposal of garbage by the land fill method. In a sanitary land fill operation a trench is excavated into which garbage is dumped for the purpose of being compacted and covered with dirt. In order to get fill dirt and to capture polluted water, other excavations are required. These excavations become filled with water. The operation was being conducted in this manner when the park was established and continued to be operated in the same manner. A great many children lived in the general area and were seen all over the site from time to time. The area was not fenced.

The pond in question was small in area and was 12 to 15 feet deep in the center.

The eleven year old boy slipped into the pond when the bank caved in. He attempted to pull himself out, but was unable to do so because the bank continued to crumble. A reasonable inference from this testimony is that the incline of the bank under the water at the edge of the pond was so steep that the boy was unable to stand. This inference could also be drawn from the testimony that a companion who attempted to rescue Victor was pulled from the water. The boys diving into the water were unable to find Victor's body. The water was dirty and muddy so that the underwater conditions could not be seen. The combination of the soft and crumbly condition of the bank above the water, and the steep incline of the bank under the water, created a condition of inherent hidden danger. The evidence reveals that there were no precautions taken to warn of, or mitigate, the danger. There is testimony which would support a finding that the inherently dangerous condition was a proximate cause of the death of the boy.

In view of the conclusion we have reached, we do not consider the other points urged by the appellants. The case is reversed and ordered remanded to the trial court.

Reversed and remanded.